SOLAR APPLICATIONS
ENGINEERING, INC.,
Petitioner,

v.

T.A. OPERATING CORPORATION,
Respondent.

No. 06–0243.

Supreme Court of Texas.

Argued Oct. 16, 2010.

Decided Dec. 3, 2010.

Douglas W. Alexander, Alexander Dubose & Townsend LLP, Austin, TX, Jeffrey D. Small, Law Office of Jeff Small, Jonathan Yedor, Heinrichs & DeGennaro, P.C., Myron E. East Jr., Barton, Schneider & East, L.L.P., San Antonio, TX, for Petitioner.

Sharon E. Callaway, Crofts & Callaway, P.C., R. Wes Johnson, The Gardner Law Firm, William W. Sommers, Gardner & Ferguson, Inc., San Antonio, TX, for Respondent.

---

1. We also received an amicus brief from the American Subcontractors Association, Inc.

Richard Gary Thomas, Thomas Feldman & Wilshusen, LLP, Dallas, for Amicus Curiae.

Justice WAINWRIGHT delivered the opinion of the Court.

In this case, a general contractor and an owner dispute performance and final payment under a construction contract.[1] Solar Applications Engineering, Inc. d/b/a Wade Construction (Solar), the general contractor, and T.A. Operating Corporation d/b/a TravelCenters of America (TA), the owner, entered a contract to build a truck stop in San Antonio, Texas. After Solar substantially completed the project, disputes arose regarding the completion of certain remaining work and the attachment of liens on the property by subcontractors and Solar. TA eventually terminated the contract and refused to make final payment to Solar. Solar sued TA for breach of contract to recover the contract balance, and TA counterclaimed for delay and defective work. At trial, the court's jury charge focused primarily on damages. The verdict substantially favored Solar, with the jury awarding actual damages of $400,000 offset by $8,000 in defects and omissions.

On appeal, TA argued that because Solar did not provide a lien-release affidavit, which TA argues was a condition precedent to final payment under the contract, Solar cannot recover for breach of contract. On rehearing, the court of appeals reversed the trial court's judgment, holding that the lien release provision was a condition precedent and that Solar failed to prove it complied with the lien-release provision. It rendered a take-nothing judgment in favor of TA.[2]

2. At the trial court and the court of appeals, TA also argued that Solar owed it

The issue before this Court is whether the lien-release provision is a condition precedent to Solar's recovery for breach of contract and whether failure to provide it is a bar to recovery. TA reasonably argues that an owner who has paid the contract amount to the general contractor is entitled to a building free of subcontractor's liens. Solar contends, also reasonably, that it is entitled to the balance remaining under the contract for completing the project offset by the cost to remedy defects and omissions. Under normal circumstances, Solar might have provided a conditional lien-release affidavit to allow Solar to fulfill its obligation under the contract, to allow TA to be assured that it will not be double-billed for work on the project, and to allow the parties to resolve their dispute regarding the scope of the work. But the standard operating procedure broke down here, and the court of appeals ultimately ruled that TA was entitled to a windfall, even though the issue of breach or satisfaction of conditions precedent was not tried to the jury.

We hold that the lien-release provision is a covenant, not a condition precedent to Solar's recovery on the contract. We reverse the judgment of the court of appeals, reinstate the trial court's judgment, and remand to the trial court for further proceedings consistent with this opinion.

$431,415.91, from damages due to delay, experts, other costs, subcontractor liens, and attorney's fees and that the trial court should have submitted a fraud instruction to the jury. The court of appeals affirmed the trial court's judgment on the damage calculation of the defects, whether the delay was excused by TA, and whether the trial court erred in refusing to submit a fraud instruction. These issues were not appealed by TA and are not before us.

**3.** Section 14.04(A) of the contract entitled *"Substantial Completion"* provides:

## I. BACKGROUND

TA entered into a contract with Solar to construct, for approximately $4 million, a retail building for use as a truck stop, restaurant, and convenience store. The contract between Solar and TA contemplates a specific sequence of events leading up to completion and final payment that is common in construction contracts. This procedure is consistent with a statutory scheme that provides contractors and builders with lien rights to secure payment for labor, but also gives owners the right to retain a percentage of the contract balance to satisfy any outstanding liens on the project if necessary.

The contractual sequence for the truck stop project is as follows: The parties agree on a construction schedule and then Solar begins work according to the schedule. On application for payment by Solar, TA is required to provide monthly progress payments. When Solar believes the construction project ready for its intended use, that it is "substantially complete," it so notifies TA. After an inspection, if TA agrees that the project is substantially complete, TA issues a "certificate of Substantial Completion" and attaches a list of items, referred to as the "punch list," to be completed or corrected before final payment.[3] Next, upon written notice from Solar that the punch list is done and the project is complete, TA conducts a final

When [Solar] considers the entire Work ready for its intended use [Solar] shall notify [TA] in writing that the entire Work is substantially complete.... [TA][sic] will prepare and deliver to [TA] a tentative certificate of Substantial Completion which shall set the date of Substantial Completion. There shall be attached to the certificate a tentative list of items to be completed or corrected before final payment.

inspection with Solar to identify any deficiencies, and Solar remedies those deficiencies.[4] After Solar corrects the identified deficiencies, it may submit a "final Application for Payment" that is accompanied by complete and legally effective releases or waivers of all lien rights ("lien-release affidavit").[5]

In this case, the parties agree that the project was substantially complete in August 2000. A few weeks later, TA presented Solar with a punch list, but disputes arose over the remaining items that needed to be completed before final payment. Solar then filed a lien against the project for $472,393, and subcontractors also filed liens against the property. TA terminated Solar pursuant to the contract's "for cause" termination provision contending that, among other things, Solar had failed to keep the project lien-free and failed to complete the punch list.[6] The termination letter also notified Solar that TA was asserting claims for $736,800.15 against Solar for its failure to complete the construction project on time. The day after TA terminated the contract, Solar provided TA with an "Application and Certificate for Payment" for $472,149, the amount Solar believed to be the remaining contract balance. TA refused to make payment, contending Solar had not complied with the lien-release provision by failing to submit a lien-release affidavit. TA contended it had no obligation to make final payment on a building with outstanding construction liens. Solar then sued TA for breach of contract under the theory of substantial performance for the unpaid balance of the contract, and TA counterclaimed for alleged delays and defective work.

By the time of trial, subcontractors filed $246,627 in liens against the project. The trial court severed the subcontractors' claims and ordered that any sums recovered by Solar, other than attorney's fees, would be held in trust for the benefit of the subcontractors' claims. The jury found in favor of Solar, and the trial court entered a judgment on the verdict in favor of Solar, awarding $392,000 in damages, which represented the balance due under the contract less an $8,000 offset to remedy all remaining "punch list" defects and omissions found by the jury.

TA appealed, and the court of appeals initially affirmed the trial court's judgment. On rehearing, however, the court of appeals reversed and rendered judgment that Solar take nothing. The court of appeals assumed that the lien-release

---

**4.** Section 14.06 of the contract entitled *"Final Inspection"* provides:

> Upon written notice from [Solar] that the entire Work ... is complete, [TA] will promptly make a final inspection with [Solar] and will notify [Solar] in writing of all particulars in which this inspection reveals that the Work is incomplete or defective. [Solar] shall immediately take such measures as are necessary to complete such Work or remedy such deficiencies.

**5.** Section 14.07(A)(2) of the contract entitled *"Application for Payment"* provides:

> The final Application for Payment shall be accompanied (except as previously de-

livered) by: (i) all documentation called for in the Contract Documents, including but not limited to the evidence of insurance; (ii) consent of the surety, if any, to final payment; and (iii) complete and legally effective releases or waivers (satisfactory to [TA]) of all Lien rights arising out of or Liens filed in connection with the Work.

**6.** Section 15.02 of the contract entitled *"OWNER May Terminate for Cause"* provides:

> A. The occurrence of any one or more of the following events will justify termination for cause ... 4. [SOLAR's] violation in any substantial way of any provisions of the Contract Documents.

provision was a condition precedent and held that the doctrine of substantial performance did not excuse Solar's failure to provide a lien-release affidavit, and thus Solar forfeited final payment under the contract. 191 S.W.3d 173, 180–81 (Tex. App.-San Antonio 2005, pet. granted). Solar petitioned this Court, complaining that the court of appeals erred because: (1) the lien-release provision was not triggered; (2) the lien-release provision is not a condition precedent; and (3) even if the lien-release provision is a condition precedent and was triggered, the court of appeals' decision results in a forfeiture of Solar's right to recover under the contract instead of delaying payment until the liens are released, which is inconsistent with the doctrine of substantial performance and the purpose of statutory lien rights. We granted Solar's petition.

## II. LAW AND ANALYSIS

 Whether Solar is barred from receiving the contract balance depends on whether the lien-release provision is a condition precedent to Solar's recovery for breach of contract. "A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation." *Centex Corp. v. Dalton,* 840 S.W.2d 952, 956 (Tex.1992) (citations omitted); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 224 (1981) ("A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due."); *id.* § 225 (noting the effects of the non-occurrence of a condition). A covenant, as distinguished from a condition precedent, is an agreement to act or refrain from acting in a certain way. *Reinert v. Lawson,* 113 S.W.2d 293, 294 (Tex.Civ.App.-Waco 1938, no writ). Breach of a covenant may give rise to a cause of action for damages, but does not affect the enforceability of the

remaining provisions of the contract unless the breach is a material or total breach. *E.g., Hernandez v. Gulf Group Lloyds,* 875 S.W.2d 691, 692–94 (Tex.1994); RESTATEMENT (SECOND) OF CONTRACTS §§ 236 cmt. a, 241, 242 cmt. a. Conversely, if an express condition is not satisfied, then the party whose performance is conditioned is excused from any obligation to perform. *See Dalton,* 840 S.W.2d at 956; RESTATEMENT (SECOND) OF CONTRACTS § 225.

Solar claims that the court of appeals erred in concluding that the lien-release provision is a condition precedent because it lacks conditional language normally associated with express conditions. *See Criswell v. European Crossroads Shopping Ctr., Ltd.,* 792 S.W.2d 945, 948 (Tex. 1990). When the lien-release provision is read in context, Solar contends it constitutes a "hoop" or step that the general contractor must follow in order to collect final payment, not a condition precedent to sue and recover under the contract. Because a different and reasonable interpretation of the contract is possible, Solar argues the Court should construe the provision to prevent a forfeiture. *See id.* Further, the lien-release provision should not be applied as a condition precedent because its purpose—to protect TA from the possibility of having to pay twice—was accomplished by the trial court's severance of the subcontractors' claims against the project and order that the sums awarded to Solar be held in trust to pay outstanding sub-contractor liens.

TA responds that the court of appeals correctly held Solar was not entitled to the contract balance because it did not show that it complied with an express condition precedent to final payment. Section 53.085 of the Texas Property Code specifically authorizes an owner to require a lien-release affidavit as a condition of final payment. *See* TEX. PROP.CODE § 53.085(a),

(c)(1).[7] Consistent with section 53.085, section 14.07(A) of the contract requires that an application for final payment include a lien-release affidavit, and section 14.07(B) provides that TA's obligation to pay the final amount is conditioned on its review of the final application. Contending that the language of the contract is "unmistakable," TA concludes that forfeiture does not excuse Solar's failure to comply with this express condition. *See* RESTATEMENT (SECOND) OF CONTRACTS § 229 cmt. a (1981) ("[I]f the term that requires the occurrence of the event as a condition is expressed in unmistakable language, the possibility of forfeiture will not affect the interpretation of that language."). Being quite candid, TA offered at oral argument that the Legislature may well have intended such a windfall for owners.

 "In order to determine whether a condition precedent exists, the intention of the parties must be ascertained; and that can be done only by looking at the entire contract." *Criswell,* 792 S.W.2d at 948 (citing references omitted); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 226. "In order to make performance specifically conditional, a term such as 'if', 'provided that', 'on condition that', or some similar phrase of conditional language must normally be included." *Criswell,* 792 S.W.2d at 948 (citing *Landscape Design v. Harold Thomas Excavating,* 604 S.W.2d 374, 377 (Tex.Civ.App.-Dallas 1980, writ ref'd n.r.e.)). "While there is no requirement that such phrases be utilized, their absence is probative of the parties intention that a

promise be made, rather than a condition imposed." *Id.* (citing *Hohenberg Bros. Co. v. George E. Gibbons & Co.,* 537 S.W.2d 1, 3 (Tex.1976)). When no conditional language is used and another reasonable interpretation of the contract is possible, "the terms will be construed as a covenant in order to prevent a forfeiture." *Id.*

Section 14.07(A) of the contract states:

1. After [Solar] has, satisfactorily completed all corrections identified during the final inspection and has delivered ... [pertinent] documents, [Solar] may make application for final payment following the procedure for progress payments.

...

2. The final Application for Payment shall be accompanied (except as previously delivered) by: (i) all documentation called for in the Contract Documents, including but not limited to the evidence of insurance; (ii) consent of the surety, if any, to final payment; and (iii) complete and legally effective releases or waivers (satisfactory to [TA]) of all Lien rights arising out of or Liens filed in connection with the Work.

The operative language, that Solar will provide "complete and legally effective releases or waivers ... of all Lien rights" does not contain language that is traditionally associated with a condition precedent. The language preceding the lien-release provision does not make performance conditional. In the absence of any conditional

---

7. Section 53.085 provides:

> Any person who furnishes labor or materials for the construction of improvements on real property shall, if requested and as a condition of payment for such labor or materials, provide to the requesting party, or the party's agent, an affidavit stating that the person has paid each of the person's subcontractors, laborers,

> or materialmen in full for all labor and materials provided to the person for the construction.... The affidavit may include ... a waiver or release of lien rights by the affiant that is conditioned on the receipt of actual payment or collection of funds when payment is made by check or draft.

TEX. PROP.CODE § 53.085(a), (c)(1).

language, a reasonable reading of the lien-release provision is that it is a promise or covenant by Solar to provide a lien-release affidavit in exchange for receiving final payment. This interpretation avoids forfeiture and completes the contract: Solar is paid for the work it completed, and TA receives an unencumbered building. TA correctly noted in its motion for rehearing at the court of appeals that Solar's breach results in "a delay in payment to Solar until the liens are released." The court of appeals' contrary interpretation results in a forfeiture to Solar and a windfall to TA. *Cf. Criswell*, 792 S.W.2d at 948; RESTATEMENT (SECOND) OF CONTRACTS § 227, cmt. d (1981) (Section 227(2) favors "an interpretation that ... avoids the harsh results that might otherwise result from the non-occurrence of a condition and still gives adequate protection to the obligor.").

TA alleges that key language in section 14.07(B) creates the condition precedent. That section states:

> If, on the basis of [TA's] observation of the Work during construction and final inspection, and [TA's] review of the final Application for Payment and accompanying documentation as required by the Contract Documents, [TA] is satisfied that the Work has been completed and [SOLAR's] other obligations under the Contract Documents have been fulfilled, [TA] will, within ten days after receipt of the final Application for Payment, indicate in writing [TA's] recommendation of payment and present the Application for Payment for payment. At the same time [TA] will also given written notice to [SOLAR] that the Work is acceptable.... Otherwise [TA] will return the Application for Payment to [SOLAR], indicating in writing the reasons for re-

fusing to recommend final payment, in which case [SOLAR] shall make the necessary corrections and resubmit the Application for Payment.

While TA is correct that section 14.07(B) contains the conditional language "if," the section does not create a condition of payment to the lien-release affidavit. Rather, the condition is *if* TA is satisfied with the Work and the Contractual Documents, *then* it will recommend that Solar be paid the retainage. If TA is not satisfied with the work, then Solar "shall make the necessary corrections and resubmit the Application for Payment." Solar's obligation to provide a lien-release affidavit, and TA's obligation to pay, lie separate and apart from TA's approval of the project. If this condition were allowed to prevent Solar from suing on the contract when a building was substantially complete, then Solar would be beholden to TA to be "satisfied." In other words, if either Solar or TA disagreed with the other party's performance under the document, TA could likely sue Solar, but Solar could not sue to be paid, because TA was not satisfied under the contract.

While the Legislature's statutory scheme for contractor's lien rights provides that the parties may have chosen an alternative path, the overall scheme of the Property Code suggests interpreting the provision to avoid a forfeiture. The process for final payment common to construction contracts is complemented by statutes that protect contractors and owners in case the contractual process breaks down. First, the Texas Constitution and the Texas Property Code grant a lien in favor of contractors and builders extending to the building on which they have labored. TEX. CONST. art. XVI, § 37;[8]

---

8. Article XVI, section 37 of the Texas Constitution provides:

> Mechanics, artisans and material men, of every class, shall have a lien upon the buildings and articles made or repaired

TEX. PROP.CODE §§ 53.001–.260. Thus, if the owner becomes insolvent or refuses to pay, the contractor has recourse to recover the sums owed by foreclosing on the liens on the property. However, the contractor's lien gives contractors unequal leverage over owners and leaves owners vulnerable to insolvent contractors. For instance, if disagreements arise over the quality of the work and the owner threatens to withhold payment to the general contractor absent remedial measures, the general contractor can simply refuse to pay a subcontractor who can then place a lien on the property. Owners do not have similar self-help remedies and must resort to litigation. Similarly, if the owner pays the general contractor the full contractual sum, but the general contractor does not pay a subcontractor, the subcontractor can place a lien on the property. The owner, after already paying the general contractor in full, is forced to pay the subcontractor in order to receive the property lien-free and must again resort to litigation to recover the money already paid to the general contractor, who at this point may be insolvent.

The unequal bargaining positions created by the contractor's lien rights is addressed through the mechanism of "retainage." The Property Code requires that, during the progress of work under a contract for which a contractor's lien may be claimed, the owner shall retain ten percent of the contract price. TEX. PROP.CODE § 53.101. This retainage secures the payment of any contractor or subcontractor who may assert a lien on the property in the event that the general fails to pay them. *Id.* § 53.102. In turn, retainage gives the owner offsetting leverage against the general contractor, whose receipt of the final ten percent of the contract balance is subject to its payment of the subcontractors in full. Thus, the contractor receives leverage over the owner in the form of the contractor's lien, and the owner receives equal leverage over the contractor in the form of the retainage. Both then have the incentive to complete the terms of the deal and the enforcement mechanisms to help ensure payment.[9]

Finally, the Property Code allows the parties to contract for payment of the retainage to the contractor upon the owner's receipt of a lien-release affidavit. *Id.* § 53.085. This contractual mechanism preserves the rights of the parties but avoids the more cumbersome statutory process for retainage release. *See, e.g., id.* § 53.106. Essentially, the owner trades the retainage for the contractor's sworn assurance that property is lien-free. An all-bills-paid is different from a lien release, and is generally not enforceable as a condition precedent to final payment. *See Lesikar Consr. Co. v. Acoustex, Inc.,* 509 S.W.2d 877, 880–81 (Tex.Civ.App.-Fort Worth 1974, writ ref'd n.r.e.). However, the parties may agree that, as part of the affidavit, the contractor swears that lien rights are released "conditioned on the receipt of actual payment or collection of funds...." TEX. PROP.CODE § 53.085(c)(1).

by them for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens.
TEX. CONST. art. XVI, § 37.

9. Likewise, chapter 56 of the Business and Commerce Code, formerly section 35.521 of the Business and Commerce Code, neither of which is applicable to this case, protects subcontractors by setting circumstances in which contingent payment, or "pay-when-paid" clauses are enforceable. Act of June 16, 2007, 80th Leg. R.S., ch. 498 § 1, 2007 Tex. Gen. Laws 879, *repealed by* Acts 2007, 80th Leg., ch. 885, § 2.47(a)(1), 2007 Tex. Gen. Laws 2086 (current version at TEX. BUS. & COMM.CODE ch. 56).

Under peaceful circumstances, the all-bills-paid affidavit accomplishes the statutory goals of the contractor's lien and retainage in a voluntary and efficient manner. The general contractor provides an affidavit and conditional release of lien, stating that when the contractor receives payment, all liens on the property will be released. *Id.; see also* THE CONSTRUCTION PROJECT: PHASES, PEOPLE, TERMS, PAPERWORK, PROCESSES § 4.VII.B.5 (Marilyn Klinger & Marianne Susong, eds., 2006) (defining a conditional lien release for subcontractor work). The standoff is resolved; the contractor gets paid (to be distributed to the subcontractors, with whom they have a conditional lien release), and the owner gets its building free of encumbrances.

 Nonetheless, TA argues we should hold that the lien release is not only a condition to receive the retainage, but also a condition to fulfillment of Solar's contractual duties and thus entitlement to the contractual balance. Under this reading, Solar effectively waived its statutory and constitutional contractor's lien rights in the contract because it would not be entitled to the contractual balance until it released those rights. That view would have a contractor bargain away any leverage it had under the default rules, as an owner could simply accept the lien release and then refuse to pay, forcing the contractor to sue for the retainage. Holding that these lien-release provisions, common to construction contracts for the reasons outlined above, are conditions precedent to suit on the contract without express conditional language contravenes the lien statutes' goal of allowing the contractor or owner to avoid litigation by foreclosing on their lien or withholding the retainage. Parties are free, of course, to contract out of statutory default rules such as those established by the lien statutes and may even contractually waive constitutional rights. *See Fort Worth Indep. School Dist. v. City of Fort Worth,* 22 S.W.3d 831, 844 (Tex.2000) ("A party contractually waives its constitutional or statutory rights by intelligently, voluntarily, and knowingly relinquishing a known right or acting inconsistent with claiming that right.") But there would be little need for TA to bargain *ex ante* for a forfeiture clause in the contract in case Solar refused to provide a lien release. If the situation were to arise in which Solar was unable to assure TA that no liens would be placed on the property, the default rules already give TA the ability to withhold the retainage. A forfeiture clause would be overkill and expensive.

In this case, because both owner and contractor had a dispute over the scope of the work and subcontractors had placed liens on the property, the trial court severed the subcontractors claims. Alternatively, and ideally, Solar could have provided a conditional lien-release affidavit, which, when the trial court determined the amount owed to Solar, would have been effective once TA paid. But even under our interpretation of section 14.07 of the contract, TA will not be saddled with concerns about double-payment. The trial court will determine whether any subcontractor liens are still pending and, if so, TA may seek to discharge the liens, sue Solar for breach of the lien-release provision, or seek indemnification (either through common law or express terms of the parties contracts) from Solar for Solar's failure to pay the subcontractors.

For all of these reasons, absent clear language that a lien release is a condition precedent to a general contractor performing under the contract and receiving the contract balanced owed to it, we interpret the lien-release provision to be a covenant. We recognize that parties are free to contract as they choose, and TA should not be

denied the benefit it specifically bargained for in the lien-release provision. *Cf. Citizens Nat'l Bank in Abilene v. Texas & P. Ry. Co.*, 136 Tex. 333, 150 S.W.2d 1003, 1006–07 (1941) (declining to apply the lien-release provision because no liens had been filed). The lien-release provision here gives TA the right to sworn assurances that it will receive a lien-free property prior to making final payment. The contract specifies that "complete and legally effect releases or waivers of all Lien rights" will satisfy as such assurance, but also that Solar "may furnish a Bond or other collateral satisfactory to [TA] to indemnify [TA] against any lien." Accordingly, on remand the trial court must determine whether the subcontractors' liens have been satisfied and TA is adequately assured of a lien-free property before reinstating the judgment in favor of Solar for the balance owed under the contract.[10]

### III. CONCLUSION

For the foregoing reasons, we reverse the court of appeals' judgment and remand to the trial court for proceedings consistent with this opinion.

Justice GREEN did not participate in the decision.

---

10. Evidently, the trial court attempted to protect TA from double liability by severing the subcontractors' liens and ordering that any recovery Solar obtained would be held in trust for the benefit of the subcontractors. However, it is unclear whether by adjudicating Solar's and TA's cross-claims first the trial resulted in a judgment for Solar against TA for the final payment amount with the liens remaining against TA's property. The judgment did not bind the subcontractors and did not necessarily guarantee that TA would receive a lien-free property prior to making final payment. At oral argument, TA conceded that the liens have all been satisfied, but this fact is not in the record.