

## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00167-CV

RALPH P. LARRISON, JR.                    APPELLANT/APPELLEE

V.

CATALINA DESIGN                           APPELLEE/APPELLANT

------------

### FROM THE 48TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

----------

In twenty-nine issues, Ralph P. Larrison Jr. appeals the trial court's finding that he misapplied construction trust funds held in trust for Catalina Design. We modify the trial court's judgment and affirm it as modified.

## I. Background Facts

Larrison Construction Texas, Inc. (LCTI), a general contractor, contracted with Catalina on three commercial construction projects—a project for the Texas Motor Speedway, the First Baptist Church of Dennis, and an office building for

---

[1]*See* Tex. R. App. P. 47.4.

the law firm of Canas & Flores—for Catalina to provide masonry services. Until May 5, 2006, Larrison was the owner of LCTI. Larrison also owns another company called Larrison Construction, Inc. (LCI). On May 5, Larrison sold LCTI to Stephen McCune. When Larrison sold the company, Catalina had not received final payment on any of the projects.

Sometime after the sale, there was a work-order change on the church project. LCTI asked Catalina to perform additional work, but they did not agree on a price. McCune told them to go forward with the change anyway, but Catalina did not. McCune claims that LCTI stopped paying Catalina because Catalina did not complete the church project, their work was unacceptable, LCTI incurred various fines for OSHA violations, and LCTI had to pay someone else to complete the work on the church.

Catalina filed suit against LCTI, LCI, Larrison, and McCune, alleging that it was owed $21,862 for work it performed on the projects ($7,034 for the office building; $9,528 for the church; and $5,300 for the Speedway). Catalina filed a sworn account affidavit and verification with its petition. Larrison did not file a sworn denial. Immediately before the trial was to begin, the trial court granted an interlocutory agreed judgment against LCTI in favor of Catalina for $26,862 ($21,862 in damages and $5,000 in attorney's fees). Pursuant to the terms of the agreed judgment, Catalina nonsuited McCune.

At the end of the trial, LCI and Larrison moved for judgment on all the claims against them. The trial court granted LCI's motion and denied Larrison's motion. The trial court then granted judgment in favor of Catalina and against Larrison for $25,088 ($17,088 in damages and $8,000 in attorney's fees) plus conditional appellate attorney's fees and postjudgment interest at 5% per annum.

2

The final judgment did not award prejudgment interest, but the findings of fact and conclusions of law included a finding that Catalina was entitled to prejudgment interest at 18% per annum under the Prompt Payment Act (PPA).

Larrison appealed the trial court's judgment. Catalina appealed the trial court's failure to award prejudgment interest. Because we hold that the trial court did not err by finding Larrison liable; that the award of attorney's fees was error; and that Catalina was not entitled to prejudgment interest, we affirm the trial court's judgment as modified.

## II. Standard of Review

Findings of fact entered in a case tried to the court have the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury's answer. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and*

3

*"Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

### III. Discussion

#### A. Issue 1–9, 12, 13, 18–24, 26: Misapplication of Trust Funds

In his first issue, Larrison argues that the court erred by finding him liable for misapplication of trust funds. Larrison's issues 2–9, 12, 13, 18–24, and 26 attack the evidence supporting the elements of Catalina's claim of misapplication of trust funds.

A person has misapplied trust funds under chapter 162 of the property code if

(a)   he is a trustee;

4

(b)     who intentionally or knowingly, or with intent to defraud;

(c)     directly or indirectly retains, uses, disburses, or otherwise diverts trust funds;

(d)     without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds.

Tex. Prop. Code Ann. § 162.031(a) (Vernon Supp. 2010). The statute provides that "[c]onstruction payments are trust funds under this chapter if the payments are made to a contractor . . . under a construction contract for the improvement of specific real property in this state." Tex. Prop. Code Ann. § 162.001(a) (Vernon Supp. 2010).[2] Any "contractor, subcontractor, or owner . . . who receives trust funds or who has control or direction of trust funds, is a trustee of the trust funds." *Id.* § 162.002 (Vernon 2007). The money LCTI received for the work on the projects therefore constitutes trust funds subject to the statute. Further, Larrison is a trustee because he was the owner of LCTI and had control over the trust funds.[3]

---

[2]Larrison argues that the parties did not agree that the money earned under their agreements would be considered trust funds. However, the monies are trust funds by statute, regardless of whether the parties agreed. *See* Tex. Prop. Code Ann. § 162.001(a).

[3]Larrison complains that the trial court erred by finding him a trustee after he sold LCTI on May 5, 2006, and that he received trust funds after that date. The trial court did not make a finding of fact that Larrison was a trustee after May 5, 2006. Finding of fact number twelve states only that Larrison was a trustee. Further, the award granted to Catalina was for amounts owed to Catalina as shown on an open invoice record dated April 20, 2006, prior to the sale. The trial court did not award Catalina the retainage, which would not have been due until after Larrison sold the company. The trial court therefore did not commit the errors of which Larrison complains.

Around the time of the sale of LCTI to McCune, roughly $30,000 was transferred from LCTI's bank account to LCI's bank account. Larrison testified that this was part of the sale price that McCune was to pay to Larrison for the company. This evidence directly contradicts Larrison's argument that LCTI could have "simply paid out all of the money and [did] not [have] any money left to pay [Catalina]." LCTI clearly had at least $30,000 left in the account. Further, McCune testified that he had decided to stop paying Catalina because he believed they did not complete their work on the church, not because LCTI did not have the money.

Both Larrison and McCune testified that the contracts with Catalina mandated payment to Catalina within ten days of receipt of the funds. The PPA mandates payment within seven days. *Id*. § 28.002(b) (Vernon 2000). The Construction Trust Funds Act defines "current or past due obligations" as "those obligations . . . which are due and payable by the trustee no later than 30 days following receipt of the trust funds." *Id*. § 162.005(2) (Vernon 2007). LCTI received funds for the Speedway project on March 16, 2006, and funds for the church project on April 12, 2006. Both of those payments matched payment applications submitted by LCTI to the property owners that included work by Catalina. Catalina's payments for the Speedway and the church were current or past due obligations before Larrison sold the company. Larrison's business records show that he knew that Catalina was owed $17,088 prior to the sale. This total matches the damages awarded by the court.

6

Larrison did not direct payment to Catalina but instead retained those funds in LCTI's account. The open invoice record showing $17,088 due to Catalina was dated April 20, 2006. Two weeks later, Larrison allowed for a payment from LCTI's account to be made to an account for his other company, LCI, as part of his payment for the sale of LCTI. Larrison knew that the funds were coming from LCTI's account and that Catalina had not been paid. Larrison was also aware that McCune had continued to refuse to pay Catalina.

Larrison argues that there was no evidence that Catalina provided proper lien claim waivers. The lien claim waivers released Catalina's liens on the property and were required by LCTI to be submitted with applications for payment. Larrison argues that without evidence that Catalina released its liens, Catalina cannot establish that a final payment was due.

The supreme court has recently commented on the delicate balance of leverage between trustees and beneficiaries under the construction trust statutes. *See Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 110–112 (Tex. 2010). In *Solar*, the supreme court looked at contractual language between an owner and a contractor that required "complete and legally effective releases or waivers . . . of all Lien rights" to accompany applications for payment. *Id*. at 107 n.5. It noted that the payment process at issue was a common payment process in construction contracts. *Id*. at 110. Despite the language that implies that the lien release must be executed prior to payment, the supreme court held that it was not a condition precedent to payment but a covenant to provide the lien release in exchange for payment. *Id*. at 112.

7

David Oeff, owner of Catalina, testified at trial that his practice was to sign the lien waivers when he received a check for the previous month's work. He further testified that the lien release contained language that said he had received payment and that he would not want to sign a lien waiver with that language until he had actually received payment. Larrison did not dispute Oeff's testimony.

We hold that there is sufficient evidence to support the trial court's finding that Catalina properly made demand for payment; that LCTI received the funds; and that Larrison retained, used, disbursed, or diverted trust funds without first paying his current or past due obligations to Catalina. We overrule Larrison's issues 1–9, 12, 13, 18–24, and 26.

### B. Issues 28 and 29: Affirmative Defenses

Larrison argues that Catalina failed to prove that Larrison had not "simply paid out all of the money and [did] not [have] any money left to pay [Catalina]." Paying other "actual expenses directly related to the construction" is an affirmative defense and it was therefore Larrison's burden to establish the defense. *See Lively v. Carpet Servs., Inc.*, 904 S.W.2d 868, 875–76 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (noting that the burden of proof is on the defendant to demonstrate that he used trust funds to pay actual expenses); *see also Scoggins Constr. Co. v. Dealers Elec. Supply Co.*, No. 13-06-00368-CV, 2009 WL 3390324, at *8 (Tex. App.—Corpus Christi Oct. 22, 2009, pet. denied) (mem. op.) (holding that defendants waived affirmative defenses by failing to request findings of fact addressing the elements of their affirmative defenses); Tex. Att'y Gen. Op. No. JM-945 (1988) (noting that the amendment adding the

8

affirmative defense language "plac[ed] on criminal defendants the burden of proving that expenditures were for 'actual expenses' rather than requiring the state to prove that expenditures were not for actual expenses"). Larrison provided no evidence of any actual expenses directly related to the construction that were paid with the trust funds. Larrison therefore failed to meet his burden for his first affirmative defense.

The Construction Trust Funds Act also provides the trustee an affirmative defense if the trustee retains the funds "as a result of the trustee's reasonable belief that the beneficiary is not entitled to such funds." Tex. Prop. Code Ann. § 162.031(b) (Vernon 2007). That defense requires a notice to the beneficiary of the trustee's intent to retain the funds. *Id*. Catalina requested an admission from all of the defendants that none of the defendants sent Catalina such notice. The court deemed the admission admitted. According to the trial transcript,[4] Larrison's response was "Cannot admit or deny. [LCI] and Ralph Larrison do not know what the other defendants did or did not do."

A response to a request for admission based on lack of information or knowledge is insufficient "unless the responding party states that a reasonable inquiry was made but that the information known or easily obtainable is insufficient to enable the responding party to admit or deny." Tex. R. Civ. P. 198.2. Larrison's response does not state that a reasonable inquiry was made, as required by the rules of civil procedure. The trial court was correct in ruling that the answer was insufficient.

---

[4]Catalina's first request for admissions, in which this request was made, was not admitted into evidence.

9

When a party fails to give a sufficient response to a request for admission, the request is deemed admitted. *See* Tex. R. Civ. P. 198.2(c) ("If a response is not timely served, the request is considered admitted without the necessity of a court order."). Larrison argues that the trial court erred by holding LCI's deemed admission binding against him. *See* Tex. R. Civ. P. 198.3 (stating that a matter admitted is conclusively established as to the party making the admission). However, Larrison himself made the same insufficient response. Therefore it was proper for the trial court to hold the admission binding on Larrison. And because it was deemed admitted that no defendant gave Catalina the required notice, Larrison failed to meet his burden regarding his second affirmative defense. We overrule Larrison's issues 28 and 29.

### C.  Issues 10, 11, 15–17: LCI

Larrison challenges a number of findings of fact relating to LCI. The claims against LCI were dismissed and LCI is not a party to this appeal. We overrule Larrison's issues 10, 11, 15, 16, and 17.

### D.  Issue 25: The PPA

In its appeal, Catalina argued that the trial court failed to award prejudgment interest under the PPA. *See* Tex. Prop. Code Ann. § 28.004 (Vernon 2000). Larrison's issue 25 complains of the trial court's finding that LCTI violated the PPA and therefore owed Catalina interest under the act. Catalina alleged a violation of the act against LCTI, not against Larrison. The trial court found that LCTI violated the act and did not make a similar finding against Larrison. Because Catalina did not allege a cause of action against Larrison under the PPA, it is not entitled to prejudgment interest under the act. We overrule Catalina's sole issue. And because the trial court did not allow Catalina

10

to recover prejudgment interest under the PPA against Larrison, there is no error, and we overrule Larrison's issue 25.

### E. Issues 14 and 27: Attorney's Fees

In his issues 14 and 27, Larrison argues that Catalina cannot recover attorney's fees from him. Attorney's fees cannot be awarded unless such recovery is provided for by statute or by contract between the parties. *See Dallas Cent. Appraisal Dist. v. Seven Inv. Co.*, 835 S.W.2d 75, 77 (Tex. 1992). The parties agree that the Construction Trust Funds Act does not allow for the recovery of attorney's fees. *See* Tex. Prop. Code Ann. §§ 162.001–.032 (Vernon Supp. 2010). Section 38.001 of the civil practice and remedies code allows for the recovery of attorney's fees for claims for

  (1)    rendered services;

  (2)    performed labor;

  (3)    furnished material;

  (4)    freight or express overcharges;

  (5)    lost or damaged freight or express;

  (6)    killed or injured stock;

  (7)    a sworn account; or

  (8)    an oral or written contract.

Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon 2008). In this case, the trial court made a specific finding that LCTI "breached and repudiated its contracts" with Catalina. It did not make a similar finding in regard to Larrison. The only cause of action that Catalina had against Larrison was for misapplication of trust funds. Misapplication of trust funds is not one of the causes of action listed in section 38.001, and therefore the section does not apply to Catalina's claims

11

against Larrison. Because there is no statute allowing for the recovery of attorney's fees againt Larrison, we sustain Larrison's issue 27. Because we hold that the award of attorney's fees was error, we do not need to reach Larrison's issue 14. *See* Tex. R. App. P. 47.1.

## IV. Conclusion

We overrule Larrison's issues 1 through 26, 28, and 29 and Catalina's sole issue. We sustain Larrison's issue 27 and hold that the award of attorney's fees was error. We therefore modify the trial court's judgment to remove the award of attorney's fees and affirm the judgment as modified. *See* Tex. R. App. P. 43.2(b).

LEE GABRIEL
JUSTICE

PANEL: GARDNER, WALKER, and GABRIEL, JJ.

DELIVERED: February 17, 2011

12