# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00807-CV

**Janos Farkas, Appellant**

**v.**

**Second Congress, Ltd., Appellee**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
### NO. D-1-GN-10-003632, HONORABLE JON N. WISSER, JUDGE PRESIDING

---

## NO. 03-13-00379-CV

**Janos Farkas, Appellant**

**v.**

**Second Congress, Ltd., Appellee**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
### NO. D-1-GN-10-003632, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

---

## NO. 03-13-00388-CV

**Janos Farkas, Appellant**

**v.**

**Second Congress, Ltd., Appellee**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
### NO. D-1-GN-10-003632, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING

# MEMORANDUM OPINION

These three appeals stem from the same underlying cause of action concerning Janos Farkas's decision not to fulfill an agreement to buy a condominium from Second Congress, Ltd. The trial court granted Second Congress's motion for summary judgment and awarded $86,000 in damages on its breach-of-contract claim against Farkas. It later appointed a receiver for Farkas's assets to help satisfy the judgment, then imposed $1,000 as sanctions for the attorney's fees Second Congress incurred in seeking to compel Farkas to comply with post-judgment discovery. Farkas challenges all of these rulings. We affirm the judgment and the sanctions award and dismiss as moot the appeal of the order appointing a receiver because the challenged order has been superseded by a subsequent amended order.

## 03-11-00807-CV:  The summary judgment

Farkas signed an Agreement of Sale and Purchase for a condo from Second Congress and provided an $86,000 check written on an account of his business to satisfy the earnest-money requirement. Second Congress agreed in a written addendum to the Agreement to hold the check for fourteen days to permit Farkas to replace the check with a letter of credit. The substitution never occurred, but Second Congress did not deposit the check and deliver the proceeds to the title company as agreed in the addendum. Farkas decided not to buy the condo—reportedly due to some financial losses—and stopped payment on the check. The Agreement provided that the seller could retain the earnest money as liquidated damages and its sole remedy for the buyer's failure to purchase. Second Congress sued and obtained a summary judgment in the amount of the earnest money, plus interest and attorney's fees.

On appeal, Farkas contends that the trial court erred by granting Second Congress's motion for summary judgment because (1) Second Congress did not establish the existence of a valid contract, (2) the earnest money provision was a condition precedent to the formation of the contract that was not fulfilled, (3) Farkas was within his rights to rescind the contract and withdraw his earnest money because the amount required was indeterminate under the contract, and (4) the property was later sold to a third party for more than Farkas's contract price, meaning that Second Congress was not damaged by Farkas's decision not to buy the condo.

We review the summary-judgment motion and response de novo to determine if the competent summary-judgment evidence included with those pleadings shows that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *See Valence*, 164 S.W.3d at 661. Under the "traditional" summary-judgment standard, the movant has the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000).

Did the parties form a contract?

To prove that a contract exists, a party must show the following elements: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; (5) consideration; and, if the contract is in writing; (6) execution and delivery of the contract with the intent that it be mutual and binding. *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 24 (Tex. App.—Houston [14th Dist.] 2005,

3

no pet.). "Evidence of mutual assent in written contracts generally consists of signatures of the parties and delivery with the intent to bind." *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007). The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. *National Union Fire Ins. Co. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995). Second Congress sued Farkas for breaching the earnest-money provision of the contract by stopping payment on the check, failing to pay the check, and ultimately failing to comply with the earnest-money provision.

Farkas contends that the trial court should not have enforced the Agreement because neither he nor the title company ever "received" the contract—i.e., it was not "delivered." He contends that absence of delivery prevented the Agreement from binding him and stopped it from becoming "effective" by its own terms. He also contends that he withdrew his offer before the title company received the contract.

Delivery, along with execution, is relevant to show that the party delivering the agreement intends to be bound by its promises. Farkas relies on *Sonnichsen*, in which Baylor University agents prepared and signed an employment contract but did not deliver it to the prospective employee and, therefore, Baylor was not bound by its terms. *See* 221 S.W.3d at 635. Here, the packet of documents with the Agreement including a limited warranty for the condo appear to have been prepared by Second Congress and presented/delivered to Farkas for his signature. Both parties have signed the Agreement—Farkas on July 2, 2010, and Second Congress on July 7, 2010—indicating that Farkas delivered the Agreement to Second Congress after signing it. Unlike in *Sonnichsen*, the party seeking to enforce the contract in this case received a signed copy from the other party. *See id.* We also note that, in his deposition, Farkas stated that, when he signed the

4

Agreement, he intended to proceed and that his subsequent attempt to terminate the Agreement stemmed from his own unexpected financial setbacks. The record supports the trial court's conclusion that the Agreement was executed and delivered with the intention that it be binding.

Farkas contends that he nevertheless is not bound by the Agreement because the title company never received it and, thus, the "effective date" was not triggered. The "effective date" is a term of the Agreement, not a common-law element of a contract, *see Cruse*, 165 S.W.3d at 24 (listing elements but not including effective date). Section 9.03 states that the "Effective Date of this Agreement refers to the date on which this Agreement has been receipted by the Title Company . . . ." But the Agreement does not state that delivery to the title company is a prerequisite to the formation of a contract. In section 2.03, the effective date triggers a 30-day period in which the buyer may terminate the agreement by giving the seller written notice of termination based on his inability to obtain financing for the purchase. In section 4.01 of the Agreement, the effective date triggers a 30-day period in which the buyer must make customization selections for the condo unit. The buyer expressly acknowledges that the unit may not be complete on the effective date. The Agreement does not use the term "effective date" with regard to any other terms. The fact that the title company did not receive the Agreement may have tolled some obligations defined under the Agreement, but it did not bar the formation of a binding contract between the parties.

Earnest money provision was not a condition precedent:

Farkas contends that providing earnest money for the Agreement was a condition precedent to formation of a contract and that his failure to provide it prevented the formation of a contract. Second Congress argues that the earnest-money provision is a covenant of the contract. A condition precedent is an event that must happen or be performed before a right can accrue to

enforce an obligation. *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010). If an express condition precedent is not satisfied, then the party whose performance is conditioned is excused from any obligation to perform. *Id*. By contrast, a covenant is an agreement to act or refrain from acting in a certain way. *Id*. Breach of a covenant may give rise to a cause of action for damages, but does not affect the enforceability of the remaining provisions of the contract unless the breach is a material or total breach. *Id*. Courts should avoid finding a forfeiture through noncompliance with a condition precedent if another reasonable reading of the contract is possible. *Schwarz-Jordan, Inc. v. Delisle Constr. Co.*, 569 S.W.2d 878, 881 (Tex. 1978). We examine the language of the contract as a whole looking for language that makes performance conditional, such as "if," "provided that," "on condition that," or similar terms. The absence of such words is not necessarily dispositive, but it is probative of the parties' intention that a promise is made rather than a condition imposed. *Solar*, 327 S.W.3d at 109.

The earnest-money provisions of the Agreement here are a covenant, not a condition precedent. Section 2.02 of the contract states as follows: "Earnest Money: In order to secure Buyer's performance under this Agreement, Buyer shall deposit upon execution hereof cash . . . ." That states the purpose for the deposit, but not a precondition to the Agreement. There is an addendum to the Agreement concerning Farkas's delivery of a check to Second Congress and Farkas's intention to seek another form of security, as well as provisions for the possibility that another buyer will appear and make an offer that Second Congress can take after giving Farkas the chance essentially to match the offer. The addendum does not make Farkas's provision of earnest money a condition precedent to the formation of a contract. There are provisions in section 8.02 of the Agreement for Second Congress to provide notice of and an extension of a time in which to cure

6

a breach of the Agreement, but "no such notice and extension is required in the event of Buyer's default under Section 2.02 of this Agreement." Section 8.02 states that Farkas's default entitles Second Congress to

> terminate this Agreement and retain the Earnest Money as liquidated damages, it being acknowledged and agreed that Seller would not have entered into this Agreement except in reliance on Buyer's performing its obligations hereunder . . . [and] that the Earnest Money represents a reasonable estimate, at the time of the execution of this Agreement, of the damages Seller is anticipated to incur in the event of Buyer's default.

Under the terms of the contract, the provision of earnest money is not a precondition for enforceability, but is instead a financial commitment that provides an incentive for compliance. Its forfeiture is a liquidated damages measure for the breach of the Agreement.

Was Farkas entitled to rescind because the earnest money was not a particular amount?

Farkas contends that the earnest money requirement was unenforceable because it was not a set amount, pointing to the provision in the addendum permitting Second Congress to require additional earnest money from Farkas to secure his right to purchase in the event that another buyer offered to pay a higher price. He cites *Antwine v. Reed*, in which a buyer made an offer that did not include earnest money, the seller's counteroffer required earnest money but failed to state an amount, the seller rescinded the offer before the buyer deposited any earnest money, and the court rejected the buyer's request for specific performance of the proposed-but-not-timely-consummated counteroffer. 199 S.W.2d 482, 484-86 (Tex. 1947). In that case, the contract could not be enforced because the parties never agreed simultaneously on the terms of the contract, including the amount of earnest money. Here, however, the parties agreed to the sales price and the amount of money to

7

be paid as earnest money that would serve as liquidated damages, both parties signed the Agreement, and Farkas delivered a check as permitted to satisfy the earnest-money requirement. No rescission or breach occurred until later. The parties agreed to an amount of earnest money to secure the contract and a means of doing so—the $86,000 check that the Agreement's addendum recites that Farkas had already delivered. The letter of credit with which Farkas was to replace the check was to be for the same amount. The only amount that was not set was a possible increase that was contingent on a hypothetical competing offer, and there is no evidence that this provision was invoked or that a competing offer arrived while Farkas still intended to fulfill the Agreement. The only evidence is that Farkas tried to get a letter of credit but did not, and that he then terminated the Agreement because of his own financial setbacks—not due to any action by Second Congress or any uncertainty or mistake concerning the amount of earnest money required.

Does the subsequent advantageous sale relieve Farkas of his obligation for damages?

Farkas contends that Second Congress is not entitled to recover damages from him because it sold a condo to someone else for more than he agreed to pay. In his brief, as at trial, Farkas focuses on the sale of a condo that he had previously agreed to buy but decided against, not the condo that is the subject of the Agreement that Second Congress seeks to recover damages concerning in this case. The Agreement at issue here does not refer to the other condo, nor does the liquidated damages provision concerning the earnest money mention offsets from a subsequent sale of the condo at issue in this or any other contract.

A party challenging a liquidated damages provision bears the burden of proving that it is unenforceable, either because the harm caused by the breach is not difficult or impossible to estimate or because the amount of damages set is not a reasonable forecast of just compensation.

8

*Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991); *GPA Holding, Inc. v. Baylor Health Care Sys.*, 344 S.W.3d 467, 475 (Tex. App.—Dallas 2011, pet. denied). We find no such argument or proof in Farkas's pleadings at trial or here on appeal. Instead, the Agreement recites "that Seller's damages in the event of a default by Buyer are difficult to estimate, but that the Earnest Money represents a reasonable estimate, at the time of the execution of this Agreement, of the damages Seller is anticipated to incur in the event of Buyer's default." The earnest money is intended to compensate for Farkas's refusal to purchase the unit listed in the Agreement, not for his previous failure to purchase a different condo. The trial court did not err by rejecting Farkas's arguments on the propriety of the liquidated damages provision as the measure of Second Congress's damages.

Because Farkas's arguments against the judgment fail, we affirm the judgment challenged in appellate cause number 03-11-00807-CV.

## 03-13-00379-CV: The receiver appointment

Farkas challenges the order appointing a receiver to take possession of and sell his assets to satisfy the judgment. He challenges the sufficiency of the supporting evidence, the specificity of the application, the breadth of the order, the reasonableness of the receiver's fee, and the propriety of the procedures outlined in the order. The trial court signed the order he challenges on April 3, 2013.

Second Congress moves to dismiss this appeal as moot because the trial court signed amended orders appointing a receiver on December 6, 2013, and December 9, 2013. An amended final order typically supersedes a prior final order when the new order amounts to something more than a minor clerical change. *Bahar v. Lyon Fin. Servs., Inc.*, 330 S.W.3d 379, 386 (Tex. App.—Austin 2010, pet. denied) (citing *Old Republic Ins. Co. v. Scott*, 846 S.W.2d 832,

9

833 n.2 (Tex. 1993)). When the trial court signs an amended order, the original order becomes a nullity and cannot support an appeal. *Id.* The changes—at least between the April 3 order and the December 6 order—appear to be more than clerical. The order that Farkas challenges in this appeal has been superseded and cannot support an appeal.

We dismiss appellate cause number 03-13-00379-CV without regard to the merits of the issues raised here or the validity of the subsequent orders.[1]

**03-13-00388-CV:  Sanctions**

Farkas challenges an order that he pay $1,000 in sanctions for the attorney's fees Second Congress incurred in seeking to compel him to provide post-judgment discovery. The trial court overruled all of Farkas's objections to Second Congress's requests for production and interrogatories in aid of judgment and ordered Farkas to comply with those requests. The following events at trial are relevant to this appeal:[2]

December 20, 2011     Second Congress serves post-judgment discovery requests.

---

[1] Farkas contends in his reply brief that there are problems with the new orders appointing receivers, some of which are new and some of which persist through provisions carried over from the original order appointing a receiver. He asserts in his reply brief that, unless the trial court corrects the problems, he will challenge the amended order by appeal. We note that this case is distinct from *Bahar* in that Farkas did timely appeal the original order appointing a receiver. *See Bahar v. Lyon Fin. Servs., Inc.*, 330 S.W.3d 379, 386 (Tex. App.—Austin 2010, pet. denied). Accordingly, if he timely and properly appeals from the proper amended order, he will be able to address problems timely and properly appealed in the original order.

[2] Farkas discusses many other motions, responses, and orders following the May 6 order, but none of those documents is part of the clerk's record in this case, nor did they form part of the trial court's decision on May 6, 2013 from which Farkas appeals. Farkas also refers to and the clerk's record includes documents related to motions filed by the receiver. However, the receiver did not request the discovery or the sanctions that are part of the May 6 order. We will disregard these documents as irrelevant to the order appealed.

| | |
|---|---|
| January 20, 2012 | Farkas files responses acting pro se. |
| April 26, 2013 | Second Congress files motion to compel and for sanctions regarding the December 20 post-judgment discovery. |
| | Farkas files affidavit of negative net worth and $1 for supersedeas bond. |
| April 29, 2013 | Second Congress files a motion to strike and a contest to Farkas's affidavit of net worth. |
| May 6, 2013 | Court overrules objections, compels discovery, and awards sanctions. |

On appeal, Farkas challenges only the imposition of sanctions, not the aspects of the order compelling discovery. He contends that the discovery that Second Congress requested in December 2011 exceeded the scope of that permitted after the filing of a supersedeas bond, which he filed in April 2013, and that the trial court should not have awarded sanctions for the attorney's fees incurred in seeking to compel the impermissible discovery in April/May 2013. Farkas acknowledges that the post-judgment discovery requests were pending for several months before he filed the supersedeas bond, but asserts that the trial court should not have imposed sanctions relating to the motion to compel that was filed and argued after he filed the supersedeas bond.

We review the trial court's order assessing sanctions for an abuse of discretion. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). Imposition of sanctions is appropriate (1) if there is a direct relationship between the improper conduct and the sanctions imposed—i.e., the sanctions must be directed against the abuse and abuser and be tailored to remedy any prejudice the abuse caused—and (2) if the sanctions are not excessive—i.e., the punishment should fit the crime. *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991).

11

As a judgment creditor, Second Congress was entitled to use post-judgment discovery tools to help it enforce the judgment. *See* Tex. R. Civ. P. 621a. Even after a supersedeas bond is filed suspending execution on the judgment, a creditor may conduct reasonable discovery concerning the judgment debtor's net worth when contemplating a contest to the judgment debtor's affidavit of net worth. Tex. R. App. P. 24.2(c)(2). Second Congress's discovery requests long predated Farkas's filing of the supersedeas bond. Its motion to compel discovery was filed on the same day as his bond and affidavit of net worth, and the motion appears on the trial court's docket sheet slightly above his deposit. Second Congress filed a challenge to the affidavit of net worth three days later—a week before the trial court's order on the motion to compel discovery and for sanctions that is appealed here.

Although Farkas does not ask that we alter the discovery rulings on this direct appeal,[3] he contends that we must review them because they underlie the sanctions award. The scope of discovery is within the trial court's discretion. *In re Graco Children's Prods., Inc.*, 210 S.W.3d 598, 600 (Tex. 2006) (orig. proceeding). While Second Congress initially sought the discovery to help execute on the judgment, many of the queries were relevant to Farkas's affidavit of negative net worth and the related sufficiency of the $1 supersedeas bond. The trial court found that Farkas's responses were inadequate and that his objections were meritless. The trial court also stated in open court that "[t]he order to produce this discovery is specifically in aid of the hearing on the validity of his net worth affidavit . . . [The discovery material is] required to be produced so that we can have a meaningful hearing on the objection to his net worth affidavit." Examples of queries that Farkas

---

[3] Orders compelling compliance with overly broad discovery requests are properly the subject of a petition for writ of mandamus. *In re Graco Children's Prods., Inc.*, 210 S.W.3d 598, 600 (Tex. 2006) (orig. proceeding).

12

lists support the court's decision. For example, the relevance of bank statements and accounts receivable to net worth is self-evident, and insurance policies and income tax returns could provide information useful to the inquiry.[4] Farkas has not demonstrated that the trial court abused its discretion in compelling the discovery.

Farkas has likewise not shown an abuse of discretion in the sanctions award. Second Congress filed the motion to compel the discovery only after waiting fifteen months after making its initial request. The sanction awarded against Farkas is directly related to Second Congress's expenses incurred in filing the motion to compel him to comply with the discovery that he had resisted for fifteen months. The $1,000 award represents less than four hours of work at Second Congress's attorney's hourly rate of $275. That work included preparing the motion and preparing for the hearing, the focus of which abruptly changed with Farkas's filing of the supersedeas bond. The trial court did not abuse its discretion by finding that the amount awarded was not excessive and was an appropriate remedy for Farkas's conduct.

We affirm the sanctions order in appellate cause number 03-13-00388-CV.

---

[4] Farkas argues that Second Congress failed to respond to his interrogatories demanding that Second Congress explain how its discovery requests relate to a determination of his net worth. Setting aside the fact that Second Congress objected to those requests as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, Farkas sent his requests on June 5, 2013—a month **after** the sanctions decision he challenges. Second Congress's objections/responses, filed July 7, 2013, played no part in the trial court's order of May 6, 2013, and do not show that the trial court erred when it made the decision challenged here based on the arguments and evidence before it when it made the decision. *See* Tex. R. App. P. 33.1(a).

## CONCLUSION

We affirm the judgment on the merits in appellate cause number 03-11-00807-CV, we dismiss as moot the appeal of the order appointing a receiver in appellate cause number 03-13-00379-CV, and we affirm the sanctions order in appellate cause number 03-13-00388-CV.

_____

Jeff Rose, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

03-11-00807-CV      Affirmed

03-13-00379-CV      Dismissed as Moot

03-13-00388-CV      Affirmed

Filed:   April 25, 2014