**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 9, 2009

Charles R. Fulbruge III
Clerk

No. 08-40715

SOUTH TEXAS ELECTRIC COOPERATIVE

Plaintiff - Appellee

v.

DRESSER-RAND COMPANY INC

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, Chief Judge, and HIGGINBOTHAM and HAYNES, Circuit
Judges.

HAYNES, Circuit Judge:

In this appeal, Dresser-Rand asks us to overturn a jury verdict holding it
liable for repair costs incurred by South Texas Electric Cooperative (STEC) as
a result of Dresser's failure to fulfill warranty obligations. Finding the evidence
fully supportive of the jury's verdict, we affirm.

I.

This appeal arises from a contract dispute between STEC, a utility serving
southeastern Texas, and Dresser, a manufacturer of industrial products,
including steam turbines. In 2001, STEC contracted with Dresser to purchase
a steam-powered turbine for use at one of STEC's power plants. Under the

contract, Dresser promised to manufacture and install the steam turbine free of defects in materials and workmanship; it also promised to repair defects under an express warranty.

Dresser's repair obligations included two specific notice provisions. Under paragraph 13.03(A), Dresser was required to correct any defects with the turbine after receiving written notice from STEC. Under paragraph 13.03(B), if Dresser failed to take action to correct the defects, STEC could remedy the defects itself after providing Dresser with ten days written notice.

The contract also contained a two-part procedure for resolving disputes. Under paragraph 9.04, if STEC believed it had a claim against Dresser, STEC was required to submit its claim to a contract engineer. Under paragraph 15.01, the parties agreed that after referring the dispute to the contract engineer, they would give the engineer sufficient time to issue a decision – and then, if necessary, refer the matter to the senior management of their respective organizations. The contract explicitly made a decision by the engineer a "condition precedent" to filing suit. However, the parties were not bound to accept the decision of the contract engineer.

STEC experienced problems with the turbine immediately following its installation. At its initial start-up in August 2003, the turbine vibrated at such high levels that it required immediate shut-down. The evidence at trial showed that STEC informed Dresser of these problems early on and that, indeed, Dresser was aware of the root cause of the vibration issues as early as the design/build phase of the project. Despite this knowledge, Dresser did little over the next two years to remedy the problem. While it sent STEC an action plan and proposed that STEC install new bearing pads, the vibration issue remained.

In 2003, STEC hired Bentley-Nevada to collect vibration data from the turbine in order to determine the cause of the vibration. Dresser was aware that Bentley-Nevada was conducting these tests and agreed to cover the costs. The

vibration nevertheless continued. Nearly two years later, in early 2005, STEC wrote to Dresser that it "had conducted several additional vibration studies with multiple consultants." Finally, in November 2005, STEC definitively diagnosed the cause of the turbine's vibration and, without providing Dresser further written notice, employed outside consultants to do the repair work.

STEC sued Dresser in March 2006, seeking damages in the amounts that STEC paid its outside contractors. A jury found for STEC on all of its claims. The jury found that Dresser was liable for breach of contract and breach of express warranty. On Dresser's defenses, the jury found that STEC substantially complied with the contract's notice provisions and was excused from complying with its dispute resolution provisions. The jury found damages of $706,406.46.

The district court entered judgment on the verdict and denied Dresser's motion for judgment as a matter of law. This appeal followed.

## II.

Much is left unchallenged in this appeal. Dresser does not contest that STEC informed it of the steam turbine's vibration problems, that those problems arose from a cause within the scope of Dresser's warranty obligations, or that it failed to fulfill those obligations. Rather, Dresser's contentions relate only to the adequacy of STEC's notice under paragraph 13.03(B) of the parties' contract and the propriety of the jury's determination that STEC was excused from invoking the contract's dispute resolution procedures prior to filing suit. With respect to paragraph 13.03(B), Dresser raises a host of related contentions:

- that the district court erred by submitting the issue of substantial compliance to the jury;
- that STEC failed to obtain a jury finding on substantial compliance with notice under paragraph 13.03(B); and

3

•  that the evidence was legally insufficient to support a finding of substantial compliance.

We address Dresser's challenges in turn, adhering to our well-established standard for reviewing a district court's denial of a motion for judgment as a matter of law.[1]

Dresser contends that the district court erred by submitting to the jury the issue of STEC's substantial compliance with the notice required by paragraph 13.03(B); it asserts that contractual notice provisions like these demand strict compliance.

Dresser's arguments are contrary to well-established Texas law, recognizing the applicability of the doctrine of substantial compliance to contractual notice provisions. *See Barbier v. Barry*, 345 S.W.2d 557, 562 (Tex. Civ. App.–Dallas 1961, no writ) (holding notice that failed to adhere to technical requirements of the contract effective and in substantial compliance with the contract); *see also Tex. Utils. Elec. Co. v. Aetna Cas. & Sur. Co.*, 786 S.W.2d 792, 794 (Tex. App.–Dallas 1990, writ. denied) (rejecting argument that notice provision in bond must be strictly complied with). Dresser conceded as much at oral argument.

---

[1] We review the denial of a motion for judgment as a matter of law de novo, applying the same standard as the district court:

> On motions for directed verdict and for [judgment as a matter of law] the Court should consider all of the evidence – not just that evidence which supports the non-mover's case – but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper.

*Boeing v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc), *overruled on other grounds by Gautreaux v. Scurlock Marine Inc.*, 107 F.3d 331 (5th Cir. 1997) (en banc).

In support of its strict compliance argument, Dresser relies on this circuit's decision in *PYCA Industries, Inc. v. Harrison County Waste Water Management District*, 177 F.3d 351 (5th Cir. 1999). In that case, this court held that an owner's receipt of actual notice of a claim did not relieve the contractor from strictly complying with the contract's formal protest procedures, which required that it articulate with reasonable certainty and on a timely basis the nature of its claims. *Id*. at 370-71. But *PYCA* did not establish a per se rule, *id*. at 371 & 371 n.30, and the facts here are distinguishable from that case on two significant grounds. First, the contract in *PYCA* explicitly made a failure to strictly comply with the written notice provision a basis for waiver. *Id*. at 369-70. The contract here does not. Second, in *PYCA*, the contractor's failure to strictly comply with the notice provision completely undercut that provision's central purpose, depriving the owner of an opportunity to fully investigate the contractor's "central claim." *Id*. at 371. In contrast, the evidence here supports a conclusion that the underlying purpose of the ten-day notice requirement in paragraph 13.03(B) was fully served by the actual notice received by Dresser.[2] As such, *PYCA* does not apply and the district court did not err by submitting the issue of substantial compliance to the jury.

Dresser also contends that the jury failed to render a finding that STEC substantially complied with the notice required by paragraph 13.03(B) since the only question on notice submitted to the jury asked about "notice of defective equipment," a phrase that Dresser maintains refers only to the notice required by paragraph 13.03(A). But even if the district court's question could be construed in this manner – a questionable proposition when one considers that both of the contract's notice provisions were contained in clauses addressing defective equipment – that question cannot be viewed in isolation; instead it

---

[2] *See* discussion *infra* at 6-7.

must be read in conjunction with the instructions provided to the jury. *See Jeter v. St. Regis Paper Co.*, 507 F.2d 973, 979-80 (5th Cir. 1975) (reading charge in conjunction with all other instructions). Those instructions made clear that Dresser contested STEC's compliance with both notice provisions:

> Dresser denies STEC gave effective notice *as required by various provisions of the contract* by not demanding in writing . . . that Dresser Rand repair the turbine, and *denies that STEC gave notice to Dresser Rand prior to hiring outside experts, consultants, and performing repairs.*

(emphasis added).

Accordingly, the district court did not abuse its discretion in crafting its jury charge and the question concerning substantial compliance with 13.03(B) was submitted to the jury. *See Barton's Disposal Serv., Inc. v. Tiger Corp.*, 886 F.2d 1430, 1434 (5th Cir. 1989) (District courts are "afforded great latitude in the framing and structure of the instructions and special interrogatories given to the jury, so much so [that this court is] loath to disturb that discretion absent a showing of abuse of discretion.").

Dresser also argues that the evidence presented at trial was legally insufficient to support the jury's finding that STEC substantially complied with the notice provision in paragraph 13.03(B). The doctrine of substantial compliance excuses a party's deviations from a contractual requirement, but only if those deviations do not severely impair the purpose of the requirement. *Interstate Contracting Corp. v. City of Dallas*, 407 F.3d 708, 727 (5th Cir. 2005) (applying Texas law).

The notice provision in paragraph 13.03(B) was intended to provide Dresser with a final opportunity to remedy defects falling under its warranty obligations. Evidence was presented at trial that would permit a reasonable juror to conclude that this purpose was fully effectuated.

6

Specifically, the evidence showed that Dresser was aware of the root cause of the turbine's vibration issues as early as the design/build phase of the project (nearly two years before STEC took action on its own), yet it never fulfilled its warranty obligations by remedying those defects. In light of this evidence, Dresser's contentions that the lack of formal notice deprived it of a final ten day period in which to act ring hollow. Instead, Dresser's early knowledge of the vibration issues' root cause along with its sustained failure to take action demonstrates that STEC's deviations from the written notice requirement did not impair the purpose of that requirement. As such, the evidence supports the jury's substantial compliance finding.

Finally, Dresser contends that the district court erred by entering judgment on the jury's finding that STEC was excused from invoking the contract's dispute resolution procedures prior to filing suit. Dresser notes that the contract explicitly made those procedures a "condition precedent" to the parties' exercise of further rights and remedies, including filing a lawsuit.

Forfeitures such as conditions precedent are not favorites of the law. *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987). Texas courts will excuse the non-performance of a condition precedent if the condition's requirement "'(a) will involve extreme forfeiture or penalty, and (b) its existence or occurrence forms no essential part of the exchange for the promisor's performance.'" *Varel v. Banc One Capital Partners, Inc.*, 55 F.3d 1016, 1018 (5th Cir. 1995) (quoting *Lesikar Constr. Co. v. Acoustex, Inc.*, 509 S.W.2d 877, 881 (Tex. Civ. App.–Fort Worth 1974, writ ref'd n.r.e.)).

Taking the first prong, it is clear that imposing the condition on STEC would result in an extreme forfeiture: it would bar STEC from

recovering $706,406 in repair costs, costs which the contract obligated Dresser to pay and which arose from a defect that Dresser became aware of during the project's infancy (approximately two years before STEC remedied the defects itself). It is also highly unlikely that STEC's failure to invoke the dispute resolution procedures caused Dresser any loss – Dresser certainly did not demonstrate any such loss. Those procedures were non-binding, and the parties' relationship was badly frayed by what STEC perceived as years of inaction on Dresser's part. Under these circumstances, the jury could have concluded that use of the procedures would not have led to a definitive resolution of this dispute.

Likewise, the second prong supports the jury's finding of excuse. Although Dresser points to some testimony from STEC representatives concerning the importance of these procedures, it seems clear that the central object of this contract was to install a steam turbine, not to decide how the parties would proceed in the event that a dispute over that turbine arose. In light of this, a reasonable jury could conclude that the dispute resolution procedures were peripheral to, rather than a central object of, the contract.

In sum, STEC's failure to invoke the contract's dispute resolution procedures was, at best, a technical default which did not harm Dresser. Thus, the district court properly entered judgment on the jury's finding of excuse.

### III.

For these reasons, the district court's judgment is AFFIRMED.