# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 30, 2021

Lyle W. Cayce
Clerk

No. 20-20304

SANCHEZ OIL & GAS CORPORATION,

*Plaintiff—Appellant*,

*versus*

CRESCENT DRILLING & PRODUCTION, INC.,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-2840

Before JONES, CLEMENT, and GRAVES, *Circuit Judges*.

EDITH H. JONES, *Circuit Judge*:

Sanchez Oil & Gas Corporation ("Sanchez") was sued by a subcontractor (claiming to be an "employee") of a contractor for alleged violations of the Fair Labor Standards Act. Such claims are becoming ubiquitous in the oil patch. After unsuccessfully requesting indemnification from Crescent Drilling & Production, Inc. ("Crescent"), which hired the subcontractor, Sanchez filed a third-party complaint alleging breach of contract for Crescent's failure to indemnify Sanchez and failure to comply with the FLSA. The district court denied Sanchez's motion for summary judgment and granted Crescent's. We find material fact issues as to whether

No. 20-20304

Langen was an "independent contractor" or otherwise exempt from the FLSA, and as to whether Crescent unreasonably withheld consent to the settlement. Accordingly, we REVERSE and REMAND.

## I. Background

Though it arises out of a suit under federal labor law, the present dispute is over the scope and meaning of a contract between two sophisticated entities. Sanchez, a private company engaged in the management of oil and natural gas properties, engaged Crescent to provide wellsite consulting services relating to some of its operations. Accordingly, the parties executed a Master Services Agreement ("MSA") effective August 26, 2016. The MSA was intended to "control[] and govern[]" all services performed by Crescent for Sanchez. Having agreed, among other things, to provide skilled labor, Crescent entered contracts with various individuals for their consulting services, and dispatched them to the Sanchez wellsites. Sanchez paid Crescent for services rendered and, in turn, Crescent paid these subcontractors a percentage of that fee.[1]

The MSA allocated risks and expenses between the parties. Specifically, pursuant to Section 3.1, Crescent "at its own cost" was obliged to "provide all labor [and] services . . . necessary to perform the Work."[2] Sections 4.1.1 and 4.1.6 required Crescent, at its sole cost, risk, and expense, to "[e]xamine and become familiar with the Site and all conditions and

---

[1] For example, Sanchez may pay Crescent $500 for a day's worth of labor by one of its contractors. Crescent then pays that contractor $450 for the same day's labor, retaining 10% for itself.

[2] Under MSA Section 2, the "Work" is "everything to be provided or performed by [Crescent] from time to time under a particular Work Order." A "Work Order" is defined as "the direction from [Sanchez] to [Crescent] . . . to provide [Sanchez] with goods or services at a specific time, place, and cost."

circumstances concerning such Work" and pay "for all labor and materials furnished . . . for the Work." Crescent also "warrant[ed] that the Work will be completed in strict compliance with . . . applicable law." MSA Section 6.1. Additionally, in Section 14.2, Crescent "represent[ed] and warrant[ed] that it will comply with and will cause the Contractor Group to comply with all Federal, State and local laws" including the Fair Labor Standards Act of 1938 ("FLSA"),[3] and agreed to "protect, defend, indemnify, and hold harmless [Sanchez] from any and all claims resulting from [Crescent's] breach of this article."[4] MSA Section 13.1 dictated that Crescent "shall at all times be an independent contractor with respect to the Work, and no member of the Contractor Group will be deemed to be the employee, agent, servant, representative or invitee of [Sanchez]."

The MSA included detailed indemnity procedures in Sections 11.1–10, which supplemented the indemnification duty related to the FLSA. To obtain indemnification, Section 11.10 required the prospective indemnitee to notify the other party about the underlying claim, relating specific details about the claim and the provision(s) of the MSA implicated. In the event indemnification stemmed from a third-party claim, notice was to be delivered "as soon as practicable" and include copies of all papers served according to that claim. *Id.* Section 11.10.1 offered the indemnitor the right to assume the defense of the underlying claim, but failure to do so would require the indemnitor to pay "such claims (including, reasonable costs of defense incurred and any costs paid in connection with settlement or final judgment

---

[3] Codified at 29 U.S.C. §§ 201–19.

[4] The MSA's Section 2 defines "claims" as "any and all claims, losses, damages, demands, causes of action, judgments, lawsuits, proceedings, fines, penalties, awards, costs, obligations, and liabilities of every kind and character . . . and all costs, expenses, and fees related to investigation, settlement, defense, and litigation, including court costs, attorney fees, and expert fees, arising out of, or related to, this Agreement."

No. 20-20304

with respect to such claims) that the Indemnified Party pays or becomes liable for." Notwithstanding the foregoing provision, the parties agreed, in Section 11.10.3, not to settle or compromise any claims "without prior written consent of the Indemnifying Party, which consent shall not be unreasonably withheld or delayed." But, if consent was unreasonably withheld or delayed—"including as a result of the Indemnifying Party's belief that it has no indemnification obligations"—the claim could be settled and the indemnified party could initiate litigation to determine whether consent was, in fact, unreasonably withheld. *Id.*

Against this backdrop, Kevin Langen became a subcontractor through Crescent and provided services to Sanchez from September 2016 through October 2017.[5] Langen performed a variety of roles, ranging from Production Foreman to Flowback Supervisor. Crescent initially billed for Langen's time at a rate of $728 per day and incrementally increased to $900.[6] On October 31, 2017, Langen was released "for poor job performance."[7]

On August 16, 2018, Langen sued Sanchez in federal court "to recover unpaid overtime wages and other damages owed under the [FLSA]" for himself and other workers like him. Langen alleged that he was improperly classified as an independent contractor and that Sanchez was actually his employer for purposes of the FLSA. Before filing, Langen contacted Sanchez regarding the potential suit. Sanchez in turn notified

---

[5] Langen initially began providing services for Sanchez in 2015 through another company. After Sanchez and Crescent executed the MSA and Crescent became the prime contractor, Langen contracted with Crescent and continued his work with Sanchez.

[6] The parties do not dispute that Sanchez dictated the rate at which it would pay Crescent for Langen's work. Crescent, however, maintained some flexibility in the portion of that rate passed on to Langen. At one point, Crescent reduced its fee from 12% to 11% in an effort to keep the consultants happy.

[7] During his term with Crescent, Langen earned well over $200,000.

Crescent, "making a claim for indemnification under the relevant MSAs for defense costs and any amounts paid in connection with settlement . . . or a judgment in his favor." Sanchez notified Crescent again on August 29, shortly after Langen's suit was filed, and "demand[ed] prompt and specific payment from Crescent in accordance with its indemnification obligations to Sanchez."

Crescent refused to indemnify. Sanchez next filed a third-party complaint against Crescent on September 14 in which it sought indemnity and asserted that Crescent violated the MSA. Specifically, Sanchez alleged in Count I that "Crescent [] agreed to indemnify Sanchez against any and all claims resulting from its failure to comply with the FLSA . . . [and] [t]his indemnification obligation extends to the claim asserted by Langen against Sanchez." Count II claimed that "Langen's allegations implicate Crescent, which allegedly breached the MSA by failing to comply with the FLSA with respect to payments to Langen and other consultants."

After some initial skirmishing, Crescent answered and disavowed any duty to defend or indemnify, a position it has maintained throughout this litigation. In the meantime, however, Langen and Sanchez entered into a confidential settlement agreement, which the district court approved, and Langen's suit was dismissed with prejudice. The settlement acknowledged a "bona fide and contested dispute," and neither party conceded liability. Crescent requested access to the terms of the settlement agreement, despite continuing to deny any duty to indemnify, but was refused on the ground that the terms were confidential. Nonetheless, progressing through discovery, the litigation between Sanchez and Crescent continued.[8]

---

[8] Sanchez sought indemnification not only for the Langen settlement but also for substantial attorneys' fees it incurred defending the suit.

Both sides moved for summary judgment. Sanchez sought summary judgment, first, because Crescent agreed to pay for all labor at its sole risk and expense yet violated numerous terms of the parties' contract after Sanchez incurred a "labor" cost related to defending and settling the FLSA dispute.[9] Second, Sanchez claimed indemnity because Crescent "warranted that it would comply with all applicable laws, specifically including the FLSA, and agreed to indemnify [Sanchez] for claims arising from its failure to do so." Conversely, Crescent argued that summary judgment should be granted in its favor because Crescent never violated the FLSA (though Sanchez may have done so, according to Crescent); thus, the indemnity provision was never triggered. Moreover, even if Langen was Crescent's "employee," he fell within the FLSA's highly compensated employee exemption, which meant that Crescent was not required to pay him overtime wages. Crescent's *coup de grâce* was the allegation that Sanchez failed to comply with the settlement procedures, obviating Crescent's duty to indemnify.

The district court denied Sanchez's motion and granted summary judgment for Crescent. First, the court held that Sanchez's claims for breach under MSA sections 3.1, 4.1.6, 6.1, and 13.1 did not satisfy the Federal Rule of Civil Procedure 8 standard because the Third-Party Complaint failed to state specific allegations under those provisions of the MSA and instead limited the breach of contract claim to the FLSA-related provision. The pleadings thus failed to provide adequate notice to Crescent that the breach of contract claim reached those other provisions. The court continued, however, that even if those provisions had been properly pleaded, they would still fail under the principle that specific contractual provisions control over general ones. All four provisions describe Crescent's duties in general terms

---

[9] Sanchez further alleges that Crescent breached § 13.1 by taking the position that Langen was Sanchez's employee.

while MSA § 14.2 directly addresses the FLSA, the key to this dispute. But with respect to § 14.2, the court held, Sanchez failed to present evidence that Crescent's compensation of Langen violated the FLSA. Accordingly, the court granted Crescent's motion with respect to the breach of Section 14.2.

Rejecting the indemnity claim, the court also held that Sanchez "failed to give Crescent notice of the proposed settlement with Langen and failed to grant Crescent an opportunity to consent or object to that settlement." Subsequently, the court awarded Crescent, as prevailing party under the MSA, "$391,544.50 in reasonable attorneys' fees and $15,176.05 in recoverable costs." Sanchez timely appealed.

## II. Standards of Review

This court reviews a grant of summary judgment *de novo*. *Renwick v. PNK Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018). Summary judgment is only appropriate if the pleadings and record demonstrate no genuine issue of material fact, construing all justifiable inferences in favor of the nonmovant. *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S. Ct. 2505, 2511 (1986)). A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. An issue is "genuine" if the evidence could allow a reasonable jury to return a verdict for the nonmovant. *TIG Ins.*, 276 F.3d at 759. If the moving party makes this initial showing, "the nonmovant must come forward with 'specific facts' showing a genuine factual issue for trial." *Id.* (citations omitted).

"The interpretation of a contract—including whether the contract is ambiguous—is a question of law" and this court reviews it *de novo*. *McLane Foodservice, Inc. v. Table Rock Rest., L.L.C.*, 736 F.3d 375, 377 (5th Cir. 2013). If the contract is ambiguous, "the district court's findings of fact as to the intent of the parties are reviewed for clear error." *Id.*

### III.  Discussion

Sanchez contends on appeal that the district court erred in (1) limiting the breach of contract claim exclusively to MSA § 14.2; (2) finding no material fact question regarding Crescent's alleged breach of § 14.2; and (3) concluding that no indemnification was owed because Sanchez failed to provide notice of the settlement.  We address each argument in turn.

### A.  Scope of the Breach of Contract Claim

The district court held that Sanchez failed to adequately plead breach of the MSA's sections 3.1, 4.1, 6.1 and 13.1, and that the parties' dispute must be channeled through the FLSA-specific § 14.2.  Sanchez contends it should be allowed to litigate breaches of the broader provisions.  We hold that Sanchez's pleadings adequately encompass all relevant contract provisions in this case.  But as the district court also noted, basic rules of contract interpretation prevent the other sections from affording Sanchez relief.

Federal procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief; and . . . a demand for the relief sought."  FED. R. CIV. P. 8(a)(2)–(3).  "The purpose of this requirement is 'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007) (internal quotations omitted)).  While litigants should, when possible, identify specific contractual provisions alleged to have been breached, Rule 8 does not require that level of granularity.[10]  "So long as a pleading alleges facts upon which relief can be

---

[10] *See, e.g.*, *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 731–32 (5th Cir. 2018) (rejecting the district court's conclusion that "to

granted, it states a claim even if it 'fails to categorize correctly the legal theory giving rise to the claim.'" *Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 402 (5th Cir. 2013) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 604 (5th Cir. 1981)).

Sanchez pled sufficient facts to satisfy Rule 8 with respect to claimed breaches of several material MSA contract provisions. The Third-Party Complaint states that "[t]he MSA . . . would control and govern all services performed by Crescent," and "Sanchez retained Crescent to perform work in exchange for Sanchez's promise to pay for those services." The pleading further states that Crescent was obliged "to act as an independent contractor to Sanchez" and assured Sanchez "that none of its subcontractors or employees 'will be deemed to be the employee, agent, servant, representative, or invitee of [Sanchez].'" It states that Langen performed services for Sanchez on behalf of Crescent and Sanchez paid Crescent for Langen's services. Finally, Count II incorporates all previous allegations and declares that Crescent "allegedly breached the MSA by failing to comply with the FLSA with respect to payments to Langen and other consultants." The Third-Party complaint provided sufficient notice that Crescent's alleged failure to comply with the FLSA may have breached one or more provisions of the MSA, and Crescent was not prejudiced by the fact that the complaint specifically referenced Section 14.2 but only generally alleged other MSA provisions.[11]

properly plead a breach of contract claim, a plaintiff must identify a specific provision of the contract that was allegedly breached").

[11] That the pleading was sufficient in this contract dispute, governed by an agreement neither exceedingly long nor rife with addenda, exhibits, and multiple parts, does not mean that Rule 8 would necessarily be satisfied by general allegations involving more complex contracts.

That Crescent was not prejudiced is reinforced by the facility with which the district court interpreted the parties' contract. This MSA is governed by Texas law. "In construing a contract under Texas law, courts must examine and consider the entire writing and give effect to all provisions such that none are rendered meaningless."[12] *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004) (internal quotations and citations omitted). "[N]o one phrase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions [and] a specific contract provision controls over a general one." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 889 (Tex. 2019) (internal quotations omitted).

Under Texas law, the more general provisions Sanchez now seeks to rely on are foreclosed by the rule that the specific Section 14.2 controls over other provisions' more general application. Section 6.1, for instance, warrants that Crescent's work "will be completed in strict compliance with the requirements or specifics in this Agreement . . . and applicable law." The detailed requirements of Section 14.2, however, govern Crescent's duty to comply with the FLSA and to indemnify Sanchez for failing to do so. Section 14.2 therefore supersedes § 6.1 with respect to the FLSA.[13]

Sections 3.1 and 4.1.6 require Crescent to "furnish all labor" at its own cost and pay "for all labor and materials furnished by the Contractor Group

---

[12] *See, e.g.*, *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994) ("When construing a contract, the court's primary concern is to give effect to the written expression of the parties' intent. This court is bound to read all parts of a contract together to ascertain the agreement of the parties. The contract must be considered as a whole. Moreover, each part of the contract should be given effect." (internal citations omitted)).

[13] Even assuming Sanchez could proceed under § 6.1, the only law alleged to have been violated is the FLSA, rendering § 6.1 and § 14.2 coextensive. Finding a breach of one would necessitate finding a breach of the other.

for the Work and the charges of all subcontractors" "at its sole cost, risk and expense." In this regard, Sanchez asserts that "[i]n defending and settling Langen's FLSA overtime claims . . . [it] incurred expenses and costs of labor." But Section 14.2 precludes such a broad reading. "Claims" are defined by MSA Section 2 to include "all costs, expenses, and fees related to investigation, settlement, defense and litigation . . . arising out of, or related to, [the MSA]." Effectively, Sanchez attempts to recast as a "labor cost" what the MSA more relevantly defines as a "claim." In regard to its duty to assure FLSA compliance, Crescent is required to "protect, defend, indemnify, and hold harmless [Sanchez] from any and all *claims* resulting from [Crescent's] breach of [§ 14.2]." These two more general provisions, when examined, do not create additional claims beyond that authorized by Section 14.2.

Section 13.1 yields to similar textual analysis. Addressing the legal relationship between the contracting parties, it states that Crescent "shall at all times be an independent contractor" and "no member of the Contractor Group will be deemed to be an employee, agent, servant, representative or invitee of [Sanchez]." Crescent's "Contractor Group" includes, among others, its "subcontractors of every tier." This section plainly has broad application beyond FLSA compliance.[14] For present purposes, however, the provision replicates Crescent's assurance that it will maintain the "independent contractor" status of its "subcontractors," one of whom was

---

[14] Further, contrary to Crescent's argument, the syntax of § 13.1 does not render the provision merely "aspirational." The first clause of § 13.1 expressly uses the duty creating language of "shall," which places an obligation on Crescent to ensure its own independent contractor status. And the second clause also contains duty creating language—"will be deemed." *See* BRYAN A. GARNER, GARNER'S DICTIONARY OF LEGAL USAGE 954 (3d ed. 2011) (noting that "'will' may express both parties' obligations").

Langen, and such status means that Langen should have been exempt from the FLSA.

From the standpoint of breach, however, Sections 13.1 and 14.2 address different grounds to protect Sanchez. For Sanchez's defense and settlement of Langen's FLSA suit, Section 14.2 prescribes the precise remedy: costs of defense and indemnification based on proof that Langen's claims "result[ed] from [Crescent's] breach of this article." This specific provision supersedes the more general Section 13.1. A claim by Sanchez under Section 13.1 would reach a different scenario. Suppose Crescent had misclassified Langen's status and, following a lawsuit, been required to pay, e.g., double damages for overtime pursuant to the FLSA. And then suppose Crescent had attempted to bill Sanchez for the entire debacle. In that case, Sanchez could sue (or counter-sue) Crescent for breach of Section 13.1.

The district court, in sum, construed Sanchez's pleading too narrowly, but its alternative exposition of the implicitly pled contractual provisions was correct. Sanchez is limited to the indemnification remedy for breach of Section 14.2.

## B. Sanchez's Claims for Breach of Contract & Indemnification

The court held that, based on the language of Section 14.2, Sanchez is entitled to indemnification only if it first "establish[es] that Langen's services were provided in violation of the FLSA." But according to the court, there had been no showing "that either party violated the FLSA with respect to Langen," and "Sanchez . . . presented no evidence that Crescent failed to comply with the FLSA in violation of Section 14.2 of the MSA." The court went on to reject Sanchez's claim for the additional reason that it failed to comply with the MSA's procedural terms of indemnity. Sanchez challenges both grounds for summary judgment.

### 1. Crescent's Alleged Breach of § 14.2

Crescent agrees that the MSA requires it to comply with the FLSA and to cause the Contractor Group to comply.  Crescent claims that it satisfied this obligation when it "properly" characterized Langen as an independent contractor of Crescent and did not pay him overtime wages. Section 14.2, as the district court explained, provides Sanchez with indemnification from Crescent only "from any and all claims *resulting from* [Crescent's] *breach* of [its FLSA compliance duty]."  Crescent would be immunized from this provision if Langen's compensation did not violate the FLSA.

More boldly, Crescent contends, if there was any failed compliance with the FLSA, it was Sanchez's doing.  Sanchez responds, reasonably, that pursuant to the contract, Langen must either be an independent contractor with respect to both Crescent and Sanchez, or of neither company; Sanchez *alone* cannot have violated the FLSA.

"When a contract's meaning is disputed, [the] primary objective is to ascertain and give effect to the parties' intent as expressed in the instrument." *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 763 (Tex. 2018). The instrument is construed as a whole "'according to its plain, ordinary, and generally accepted meaning unless the instrument directs otherwise.'" *Pathfinder Oil & Gas*, 574 S.W.3d at 888 (quoting *URI*, 543 S.W.3d at 764 (internal quotations omitted)).

In clarion terms, the MSA places the duty of paying Langen upon Crescent.  The parties' agreement structures their relationship as follows: Sanchez places a "Work Order" and Crescent completes the work and invoices Sanchez at the agreed rates; Crescent pays for all labor and expenses necessary to handle that work.  MSA Sections 3.1, 4, 5.  The MSA plainly requires that the wages paid for the "Work" must comport with the FLSA,

and Crescent is responsible to ensure this happens.[15]    Accordingly, to determine whether Langen's claim "result[ed] from [Crescent's] breach" of Section 14.2, the inquiry is only whether Langen was entitled to overtime wages paid by Crescent.[16]  If he was not, then there was no breach.

Believing that Sanchez had produced no relevant evidence that Crescent violated the FLSA, the district court denied summary judgment to Sanchez.  This was error.  Sanchez offered evidence that Crescent took no actions to comply with the FLSA besides classifying Langen internally as an independent contractor.  According to Sanchez, Langen was an "employee" of Crescent for FLSA purposes based on the "economic reality" test, and Crescent failed to make the legally required overtime payments.  Sanchez's fact-intensive response to Crescent's motion for summary judgment

---

[15] Crescent argues that shifting Sanchez's liability for the FLSA to Crescent violates the "fair notice (or express negligence) doctrine."  This court has held that actual knowledge of the indemnity provisions nullifies the fair notice doctrine. *See Cleere Drilling Co. v. Dominion Expl. & Prod., Inc.*, 351 F.3d 642, 647 (5th Cir. 2003) (discussing *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 n.2 (Tex. 1993) ("The fair notice requirements are not applicable when the indemnitee establishes that the indemnitor possessed actual notice or knowledge of the indemnity agreement.")).  Here, the MSA required Crescent to furnish and pay all labor, comply with the FLSA, and indemnify Sanchez for any breach of its covenant to comply.  Crescent doesn't claim lack of actual knowledge of these provisions.  Further, the indemnity clause in § 14.2 is bolded and offset in all capital typeface.  Together, these undercut any argument that FLSA indemnity is void under the fair notice doctrine.

[16] Crescent argued at summary judgment that even if Langen was an employee, he still was not entitled to overtime wages because he fell within the FLSA's highly compensated employee exemption.  29 C.F.R. § 541.601(a); *see also Faludi v. U.S. Shale Sols., L.L.C.*, 936 F.3d 215, 219 (5th Cir. 2019).  Thus, Crescent never breached the MSA.  The district court did not rule on that issue, which is currently pending before this court en banc. *See Hewitt v. Helix Energy Sols. Grp., Inc.*, 983 F.3d 789 (5th Cir. 2020), *reh'g en banc granted, opinion vacated*, No. 19-20023, 2021 WL 869058 (5th Cir. Mar. 9, 2021).

thoroughly addresses each factor of that test[17] and identifies material fact disputes. Crescent vigorously defends an independent contractor relationship with Langen under the same test. The parties' clash illustrates an obviously fact-intensive inquiry, which the district court failed to explore. *See Hobbs v. Petroplex Pipe & Constr., Inc.*, 946 F.3d 824, 829 (5th Cir. 2020) (reviewing a bench trial determination of employee status and explaining that a "district court's findings as to the [economic realities test] factors are 'based on inferences from fact and thus are questions of fact'" (citation omitted)). Because Crescent's obligation to indemnify Sanchez turns in part on Langen's FLSA status, material questions of fact remain as to whether Langen's suit "resulted from" Crescent's "breach" of its FLSA obligations, as provided in Section 14.2.

### 2. Crescent's Indemnity Obligation

Having failed to examine the fact disputes underlying the FLSA issue, the district court granted summary judgment for Crescent on the basis that Sanchez did not comply with the MSA's indemnification procedures. Section 11.10.3, the court held, includes a condition precedent to indemnity, such that Sanchez could only unilaterally settle Langen's claim *if* Crescent "unreasonably withheld or delayed its consent." Since Sanchez never gave Crescent access and an opportunity to consider the Langen settlement's terms, the court reasoned, "Crescent did not 'withhold[] or delay[] its consent'" unreasonably.

---

[17] "Those 'five non-exhaustive factors' include: '(1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship.'" *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379 (5th Cir. 2019) (quoting *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008)).

No. 20-20304

Sanchez challenges this ruling on three grounds:   (1) the court improperly construed § 11.10.3 as a condition precedent instead of a "mere covenant"; (2) Crescent suffered no prejudice and therefore cannot avoid its indemnity obligations due to lack of notice; and (3) Sanchez provided Crescent with sufficient notice and opportunity to participate in the settlement.  We need only consider the first ground.

Generally, "[c]onditions are not favored in the law; thus, when another reasonable reading that would avoid a forfeiture is available, [the court] must construe contract language as a covenant rather than a condition." *PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 636 (Tex. 2008). "But if . . . a legitimate condition precedent exists, it must be either met or excused before the obligation that hinges on the condition may be enforced." *Conn Credit I, L.P. v. TF LoanCo III, L.L.C.*, 903 F.3d 493, 502 (5th Cir. 2018) (citing Texas cases).  To determine whether a condition precedent exists, the entire contract must be interpreted to ascertain the intent of the parties. *Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990).  "In order to make performance specifically conditional, a term such as 'if', 'provided that', 'on condition that', or some similar phrase of conditional language must normally be included." *Id*.  If that conditional language is lacking, the terms will "be construed as a covenant in order to prevent a forfeiture." *Id*.

Section 11.10.3 of the MSA states that:

Each Indemnified Party agrees that it will not settle or otherwise compromise any claims to be indemnified under this Agreement without prior written consent of the Indemnifying Party, which consent shall not be unreasonably withheld or delayed.  If the Indemnifying Party unreasonably withholds or delays its consent (including as a result of the Indemnifying Party's belief that it has no indemnification obligations under this Agreement), then the Indemnified Party may settle or

otherwise compromise the applicable claims in its sole discretion, and the Indemnified Party shall be entitled to initiate litigation against the Indemnifying Party to determine whether the Indemnifying Party unreasonably withheld consent . . . .

We agree with Sanchez that, by its terms, no conditional language in this provision frames a precondition for Sanchez's recovery. This paragraph principally obliges the indemnifying party, Crescent, not unreasonably to withhold or delay its grant of prior written consent. The "if" clause speaks to what Sanchez, the indemnified party, may do if the indemnifying party unreasonably withholds consent. Sanchez may then settle unilaterally and file suit for a definitive decision on the indemnifying party's unreasonableness. This is the opposite of setting up a condition precedent against Sanchez. It is a structure for permitting reasonably settled claims to be indemnified only after a lawsuit. Moreover, the prospective indemnitor may be guilty of unreasonably having withheld or delayed consent even if it believes "that it has no indemnification obligations under this Agreement."

Nowhere does the MSA state that indemnity is owed only "if" or "provided that" or "on condition that" the party claiming indemnification adheres to the listed protocols; nowhere does it foreclose Sanchez's right to indemnity solely or expressly because of Sanchez's failure to inform Crescent of the settlement terms. The absence of such language is "probative of the parties['] intention that a promise be made, rather than a condition imposed." *Criswell*, 792 S.W.2d at 948. "When no conditional language is used and another reasonable interpretation of the contract is possible, 'the terms will be construed as a covenant in order to prevent a forfeiture.'" *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 109 (Tex. 2010) (quoting *Criswell*, 792 S.W.2d at 948). The district court erred in construing Section 11.10.3 as a condition precedent. Instead, that provision must be read as a covenant. "Breach of a covenant may give rise to a cause

of action for damages, but does not affect the enforceability of the remaining provisions of the contract unless the breach is a material or total breach." *Id.* at 108.

In this case, it is undisputed that Sanchez notified Crescent of Langen's claim before Langen filed suit; it notified Crescent immediately after Langen filed suit; and it declined to inform Crescent of the settlement terms only after Crescent had demanded to be informed while also steadfastly denying any liability under the MSA.[18]  Contrary to the district court's implication that Crescent was "deprived" of fair notice of the settlement (thus abrogating its duty to indemnify), it seems quite plausible that Crescent "unreasonably withheld or delayed" assent based solely on a belief that it had no liability, which is not a basis under the MSA for rejecting indemnity. There is a material fact issue concerning Crescent's liability under Section 11.10.3 governing its procedural duty to indemnify.  This issue requires further exploration in light of remand on the question whether Crescent breached its FLSA duty to Sanchez under § 14.2.

## IV. Conclusion

Our reading of the parties' MSA holds that, for Sanchez to obtain indemnification for the Langen settlement and its defense costs for that lawsuit, Sanchez has to prove that Langen's suit "resulted from" Crescent's "breach" of its duty to pay Langen in accord with the FLSA.  It is also necessary to decide whether Crescent unreasonably withheld consent to the Sanchez-Langen settlement.  Material fact issues exist as to both of these aspects of the relevant FLSA indemnity provisions.

---

[18] Exactly why the settlement was held confidential is not explained in this record.

No. 20-20304

Based upon these conclusions, and for the reasons further stated above, the judgment is **REVERSED** and the case **REMANDED** for further proceedings.