This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-41055

**SM ENERGY COMPANY,**

>    Third-Party Plaintiff/Third-Party
>    Counterdefendant-Appellant,

v.

**COLGATE PRODUCTION, LLC,**

>    Third-Party Defendant/Third-Party
>    Counterplaintiff-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Kathleen McGarry Ellenwood, District Court Judge**

Holland & Hart LLP
Judd C. West
Julia Broggi
Santa Fe, NM

for Appellant

Spencer Fane LLP
Sharon T. Shaheen
Randy S. Bartell
Santa Fe, NM

for Appellee

### MEMORANDUM OPINION

**MEDINA, Chief Judge.**

{1}    SM Energy Company (SM Energy) appeals the district court's order granting summary judgment in favor of Colgate Production, LLC (Colgate), relating to an indemnification dispute arising from the sale of oil and gas leases and associated

assets. SM Energy raises five issues on appeal: whether (1) written notice of proposed settlements is a condition precedent for indemnification under the Purchase and Sale Agreement (the PSA); (2) notice provisions are conditions precedent as a matter of Texas law generally; (3) Colgate repudiated its indemnity obligations under the PSA excusing SM Energy's duty to provide written notice of a settlement proposal; (4) Colgate waived its right to notice of a proposed settlement under the PSA; (5) SM Energy substantially complied with the notice provision and Colgate suffered no prejudice.

**{2}** The primary issue is whether the settlement notice provision of the indemnification agreement contains a condition precedent to an indemnification obligation for a third-party claim or if it contains a mere covenant. We hold that the notice provision contains a covenant, such that the district court may only excuse Colgate from its indemnification obligation if the breach of the provision was material. We do not understand the district court to have made such a finding as to material breach. Accordingly, we reverse and remand for further proceedings, and we do not resolve the remaining issues raised.

**BACKGROUND**

**{3}** On July 14, 2016, SM Energy and Colgate executed the PSA for oil and gas leases and associated assets in New Mexico and Texas. The PSA had an "Effective Time" of June 1, 2016, the transaction closed on August 31, 2016, and it included an article relating to indemnification.

**{4}** On June 10, 2016, Harold Keith Stephens suffered injuries while performing repair work on an oil and gas well that was among the assets acquired by Colgate in the PSA. On August 30, 2018, Stephens and family members (collectively, Personal Injury Plaintiffs (PIPs)) filed suit for negligence and premises liability against SM Energy and Gene Simer, a well consultant who was present when Stephens incurred his injuries. In response to the lawsuit, SM Energy tendered a demand for defense and indemnification on Colgate. Colgate denied it had an obligation to defend and indemnify SM Energy. SM Energy disagreed and filed a third-party complaint against Colgate seeking indemnification under the PSA and alleging breach of contract and breach of implied duty of good faith and fair dealing. Colgate's obligation to defend and indemnify SM Energy in the personal injury lawsuit was at issue in cross-motions for summary judgment, each of which were denied on the basis of genuine issues of material fact precluding judgment as a matter of law. The district court severed SM Energy and Colgate's contractual claims such that trial could proceed on the personal injury claims and a subsequent trial would determine the indemnification obligation.

**{5}** In the weeks leading up to a January 19, 2022 trial for the personal injury claims, SM Energy and PIPs engaged in settlement negotiations. In early December, SM Energy informed Colgate that PIPs would only return to mediation if defendants agreed to a settlement that fell within a specified bracket that SM Energy had previously rejected. On December 28, 2021, SM Energy informed Colgate that further settlement

negotiations with PIPs was contingent on an agreement that the settlement amount would fall within PIPs' previously identified settlement range. According to Colgate, "Colgate understood this range to still be unacceptable" to SM Energy. On January 11, 2022, SM Energy and PIPs reached a global settlement that fell within PIPs settlement range. SM Energy did not provide Colgate with written notice of the final proposed settlement amount ten days before the settlement was agreed to or before notifying the district court that the parties had reached the settlement.

**{6}**     Colgate then moved for summary judgment against SM Energy on its claims of breach of contract, breach of the implied duty of good faith and fair dealing, and declaratory judgment.[1] Colgate argued SM Energy failed to satisfy conditions precedent set forth in Section 13.7(e) of the PSA. Colgate specifically argued that Section 13.7(e) required SM Energy to provide written notice of any proposed settlement to Colgate and allow Colgate ten business days following receipt of the notice to admit its obligation to indemnify and, if such obligation was admitted, reject the proposed settlement. Section 13.7(e) of the PSA, "Indemnification Procedures," reads in relevant part:

> All claims for indemnification . . . shall be asserted and resolved as follows[:]
>
>         (e) If the [i]ndemnifying [p]arty does not admit its obligation to indemnify and bear all expenses associated with a [t]hird[-p]arty [c]laim . . . then the [i]ndemnified [p]arty shall have the right to defend against the [t]hird[-p]arty [c]laim at the sole cost and expense of the [i]ndemnifying [p]arty, with counsel of the [i]ndemnified [p]arty's choosing, subject to the right of the [i]ndemnifying [p]arty to admit its obligation to indemnify and bear all expenses associated with a [t]hird[-p]arty [c]laim and assume the defense of the [t]hird[-p]arty [c]laim at any time prior to settlement or final determination thereof. If the [i]ndemnifying [p]arty has not yet admitted its obligation to indemnify and bear all expenses associated with a [t]hird[-p]arty [c]laim, the [i]ndemnified [p]arty shall send written notice to the [i]ndemnifying [p]arty of any proposed settlement and the [i]ndemnifying [p]arty shall have the option for [ten] [b]usiness [d]ays following the receipt of such notice to (i) admit in writing its obligation to indemnify and bear all expenses associated with a [t]hird[-p]arty [c]laim and (ii) if such obligation is so admitted, reject, in its reasonable judgment, the proposed settlement.

**{7}**     The district court granted summary judgment (Order) in favor of Colgate concluding, "The notice requirement was a condition precedent to acceptance of the settlement and the failure to provide that notice prejudiced Colgate. . . . Compliance with such a notice provision such as that found in Section 13.7(e) is a condition precedent to invoking the contract rights conditioned on the notice." The district court also concluded, "SM Energy's actions breached the contract they made with Colgate. . . . Colgate was entitled to ten business days' notice of all settlement proposals, so it could exercise its

---

[1]SM Energy agreed voluntarily to dismiss its claim for breach of the duty of good faith and fair dealing.

option to evaluate such proposals and act pursuant to Section 13.7(e). There is no evidence that SM Energy gave Colgate notice of the proposed settlement with [PIPs]." As a result, "Colgate is excused from any duty to indemnify." SM Energy appealed.

## DISCUSSION

**{8}** We review the grant of summary judgment de novo. *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 7, 148 N.M. 713, 242 P.3d 280. "[S]ummary judgment is a drastic remedial tool which demands the exercise of caution in its application, and we review the record in the light most favorable to support a trial on the merits." *Woodhull v. Meinel*, 2009-NMCA-015, ¶ 7, 145 N.M. 533, 202 P.3d 126 (internal quotation marks and citation omitted). "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Bank of N.Y. Mellon v. Lopes*, 2014-NMCA-097, ¶ 6, 336 P.3d 443 (internal quotation marks and citation omitted).

**{9}** "In New Mexico, summary judgment may be proper when the moving party has met its initial burden of establishing a prima facie case for summary judgment." *Romero*, 2010-NMSC-035, ¶ 10. "Once this prima facie showing has been made, the burden shifts to the non[]movant to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Id.* (internal quotation marks and citation omitted).

**{10}** The questions presented at the summary judgment stage centered on interpretation of the PSA. The PSA contains a choice of law provision selecting Texas law as the governing law. Accordingly, we construe the PSA under Texas law.

## I.     The Written Notice of Settlement Provision of the PSA

**{11}** SM Energy contends that "the overall language of Section 13.7 reflects an express intention by the parties that notice should not be treated as a condition precedent to indemnification" and thus the district court's conclusion that notice of proposed settlement was a condition precedent to indemnification was error. SM Energy further asserts, "[T]here is no language expressly conditioning the right to indemnification on notice of a proposed settlement" and rejects the proposition "that notice provisions are always conditions precedent." SM Energy highlights another portion of the PSA, Section 13.7(b), to argue that "the parties did not intend for notice of proposed settlements to act as a condition precedent." Colgate responds that Section "13.7(e) of the PSA connects the condition of providing notice of settlement offers to the obligation for Colgate to reimburse SM Energy for the settlement."

## A.     Section 13.7(e) Contains Covenants

**{12}**    Interpretation of unambiguous contractual provisions,[2] and duties imposed upon the parties thereby, raises questions of law, which Texas courts review de novo. *See Powell Elec. Sys., Inc. v. Hewlett Packard Co.*, 356 S.W.3d 113, 117 (Tex. App. 2011) ("[T]he interpretation of unambiguous contracts is a legal question that is reviewed de novo."); *Vast Constr., LLC v. CTC Contractors, LLC*, 526 S.W.3d 709, 718 (Tex. App. 2017) ("[T]he issue of whether a contract imposes a particular duty on a party is most often a legal question we review de novo.").

**{13}**    In construing an unambiguous instrument, our primary duty is to ascertain the intention of the parties as expressed within the four corners of the instrument. *Jones Energy, Inc. v. Pima Oil & Gas, L.L.C.*, 601 S.W.3d 400, 405 (Tex. App. 2020). "In our review, we must give the instrument its plain, grammatical meaning unless doing so would *clearly* defeat the parties' intentions." *Id.* In doing so, we "examine the entire instrument and attempt to harmonize all of its parts, even if different parts of the same instrument appear contradictory or inconsistent." *Id.* We do so "because we must presume that the parties intended every clause to have some effect." *Id.* With regard to indemnity agreements, Texas courts strictly construe them "to give effect to the intent of the parties as expressed in the contract," and courts "construe the indemnity paragraph to provide a common sense reading." *Melvin Green, Inc. v. Questor Drilling Corp.*, 946 S.W.2d 907, 910 (Tex. App. 1997).

**{14}**    "A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation." *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010) (internal quotation marks and citation omitted). In contrast, "[a] covenant . . . is an agreement to act or refrain from acting in a certain way." *Id.* "Breach of a covenant may give rise to a cause of action for damages, but does not affect the enforceability of the remaining provisions of the contract unless the breach is a material or total breach." *Id.* "[T]o determine whether a condition precedent exists, the intention of the parties must be ascertained; and that can be done only by looking at the entire contract. In order to make performance specifically conditional, a term such as 'if,' 'provided that,' 'on condition that,' or some similar phrase of conditional language must normally be included." *Criswell v. Eur. Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990) (citations omitted). Further, "conditional language must connect the condition precedent to the conditioned obligation." *Arbor Windsor Ct., Ltd. v. Weekley Homes LP*, 463 S.W.3d 131, 137 (Tex. App. 2015). "[F]orfeiture by finding a condition precedent is to be avoided when another reasonable reading of the contract is possible." *Id.* at 136 (internal quotation marks and citation omitted)*.*

**{15}**    Section 13.7(e) provides that Colgate has a right "to admit its obligation to indemnify and bear all expenses associated with a [t]hird[-p]arty [c]laim and assume the defense of the [t]hird[-p]arty [c]laim at any time prior to settlement or final determination thereof" if Colgate has not admitted an obligation to indemnify. The next sentence of Section 13.7(e) allocates a specific manifestation of this right when it comes to

---

2Neither party argues that the provision at issue is ambiguous. While we are not bound by the parties' concession that the provision is unambiguous, we accept it.

settlement proposals. Section 13.7(e) outlines that "if the [i]ndemnifying [p]arty [Colgate] has not yet admitted its obligation to indemnify and bear all expenses associated with a [t]hird[-p]arty [c]laim," then the indemnified party, SM Energy here, "shall send written notice to the [i]ndemnifying [p]arty [Colgate] of any proposed settlement and the [i]ndemnifying [p]arty [Colgate] shall have the option for [ten] [b]usiness [d]ays following the receipt of such notice" to review the proposal and determine whether to admit an obligation to indemnify.

{16}    The presence of conditional language here does not by itself indicate that this section contains conditions precedent. Pivotally, lacking from this section is any plain connection to the indemnifying party's obligation to indemnify in the first place. *See id.* at 137 ("[C]onditional language must [also] connect the condition precedent to the conditioned obligation."). Further, in another subsection, Section 13.7(b), the PSA directly implicates the indemnification obligation in a condition. It reads:

> "[SM Energy shall provide a claim notice promptly] provided that failure . . . to give notice of any [t]hird[-p]arty [c]laim . . . shall not relieve [Colgate of its indemnification obligations under other sections of the PSA] except to the extent such failure results in insufficient time being available to permit [Colgate] to effectively defend against the [t]hird[-p]arty [c]laim or otherwise materially prejudices [Colgate's] ability to defend against the claim."

{17}    This connection of a condition to the obligation of indemnification in another section of the PSA further supports that the written notice of settlement provision at issue here that does not directly connect conditional language to the indemnification obligation is a mere covenant. *See Solar Applications Eng'g, Inc.*, 327 S.W.3d at 110 (rejecting the notion that conditioning some obligations necessarily operates to condition others); *Arbor Windsor Ct., Ltd.*, 463 S.W.3d at 136 (Texas courts will avoid forfeiture by condition precedent "when another reasonable reading of the contract is possible." (internal quotation marks and citation omitted)); *C&C Rd. Constr., Inc. v. SAAB Site Contractors, L.P.*, 574 S.W.3d 576, at 588-89 (Tex. App. 2019) (reasoning that Texas courts consider the entire contract, looking to sections within a contract that suggest the "parties knew how to make an obligation expressly conditional on a preceding event" to shed light on whether other sections without express conditions linked to obligations should be interpreted as conditions precedent enabling forfeiture); *Sanchez Oil & Gas Corp. v. Crescent Drilling & Prod., Inc.*, 7 F.4th 301, 314-15 (5th Cir. 2021) (observing that "nowhere does [the agreement] foreclose [indemnified party's] right to indemnity solely or expressly because of [indemnified party's] failure to inform [indemnifying party] of the settlement terms" and holding that a material fact issue on the question indemnifying party's procedural duty to indemnify required more consideration on remand). As such, we do not read the notice provision in the PSA to be a condition precedent, but rather a covenant. *See Arbor Windsor Ct.*, 463 S.W.3d at 136-37 ("[I]f the language of the contract is susceptible to a non[]condition precedent interpretation, we accept that construction and construe the language as a mere covenant.").

**B.    A Breach Must Be Material to Excuse Performance of a Covenant**

{18}    As noted above, "[a] condition precedent to an obligation to perform is an act or event that must occur before there is a right to immediate performance and before there is a breach of contractual duty." *PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 638 (Tex. 2008) (J. Willett, dissenting) (internal quotation marks and citation omitted). "[F]ailure to comply with such a condition forfeits coverage and releases the [indemnifying party] from any duty to defend or indemnify." *Id.* "Breach of a covenant may give rise to a cause of action for damages, but does not affect the enforceability of the remaining provisions of the contract unless the breach is a material or total breach." *Solar Applications Eng'g, Inc.*, 327 S.W.3d at 108.

{19}    "A fundamental principle of contract law is that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform." *Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994). "Materiality is normally a question of fact, but it may be decided as a matter of law if reasonable jurors could reach only one verdict." *Leonard v. Knight*, 551 S.W.3d 905, 910 (Tex. App. 2018) (text only) (citation omitted). "In determining the materiality of a breach, courts will consider, among other things, the extent to which the nonbreaching party will be deprived of the benefit that it could have reasonably anticipated from full performance. The less the non[]breaching party is deprived of the expected benefit, the less material the breach." *Hernandez*, 875 S.W.2d at 693 (citations omitted).

{20}    The district court concluded that SM Energy breached the contract by failing to comply with the ten-day notice requirement, and Colgate was prejudiced because had it received notice Colgate "could have admitted their obligation and decided to reject the settlement" and therefore, Colgate was excused from any duty to indemnify. However, we do not understand the district court to have determined whether the breach was material. Accordingly, in light of our conclusion that the notice provision is a covenant, the district court erred in holding that "Colgate is excused from any duty to indemnify" without determining whether the breach was material. *See Mustang Pipeline Co., Inc. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) ("It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance.").

**II.    SM Energy's Remaining Arguments Against Summary Judgment**

{21}    SM Energy also argues that it substantially complied with Section 13.7(e) and that Colgate waived and/or repudiated its indemnity obligations such that SM Energy's performance under the PSA is excused. Having held that the district court's excusal of Colgate's indemnity obligation on the ground that Section 13.7(e) was a condition precedent was error, SM Energy's arguments as to substantial compliance, waiver, and repudiation remain outstanding, the review of which are contingent on factual questions. *See Sorrell v. Est. of Carlton*, 593 S.W.3d 167, 174 (Tex. 2019) ("[Substantial compliance] involves questions of both fact and law." (internal quotation marks and citation omitted)); *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) ("Waiver is

ordinarily a question of fact, but when the surrounding facts and circumstances are undisputed . . . the question becomes one of law."); *see generally Berg v. Wilson*, 353 S.W.3d 166, 176-79 (Tex. App. 2011) (analyzing a refused proposed jury question and concluding the district court did not abuse its discretion by subsuming the repudiation questions into jury questions related to sequence of breach).

**{22}**     As to substantial compliance, relying on *James Construction Group, LLC v. Westlake Chemical Corporation*, 650 S.W.3d 392 (Tex. 2022), SM Energy argues, "Although there was no formal proposed settlement in December 2021, SM Energy substantially complied with Section 13.7(e) by giving Colgate notice of its intention to attempt settlement within [the PIPs required settlement bracket]." SM Energy continues by stating, "This form of notice, although not in strict compliance with Section 13.7(e), did not seriously impair the purpose behind the provision, which is to allow the indemnifying party a final opportunity to take over the defense of the lawsuit before the indemnified party settles the matter." SM Energy asserts that Colgate suffered no prejudice as Colgate had the opportunity to admit its obligation to indemnify for more than three years prior to the settlement agreement, and, as such, Colgate is "exploiting a technicality to avoid honoring its indemnity obligations." Colgate argues that "a writing is a necessary part of [SM Energy's compliance]" and that "no notice, written or otherwise, of the proposal to settle for [the final settlement amount]" was provided.

**{23}**     In determining that SM Energy failed to satisfy a condition precedent such that Colgate's duty to indemnify was excused and considering substantial compliance, the district court cited *South Texas Electric Cooperative v. Dresser-Rand Co.*, 575 F.3d 504 (5th Cir. 2009). The district court reasoned, "The doctrine of substantial compliance excuses a party's deviations from a contractual requirement, but only if those deviations do not severely impair the purpose of the requirement." *See id.* at 508 (internal quotation marks and citation omitted). The district court further articulated, "Substantial compliance is applicable to contractual notice provisions." *See id.* at 507. Then, citing no authority, the district court continued, "[I]f the failure to strictly comply with the notice provision undercuts the notice provision's central purpose, substantial compliance is not enough."

**{24}**     To the extent the district court determined that SM Energy needed to strictly comply with the notice provision, it erred. Substantial compliance is a defense when there is an alleged breach of a contractual notice provision; strict compliance is not necessary. *See id.* ("[The defendant's] arguments [that contractual notice provisions require strict compliance] are contrary to well-established Texas law, recognizing the applicability of the doctrine of substantial compliance to contractual notice provisions."). On remand, should the parties renew their arguments on this point, we clarify that the appropriate standard is whether SM Energy substantially complied with the written notice provision. *See Sorrell*, 593 S.W.3d at 174.

**CONCLUSION**

**{25}** For the above reasons, we reverse and remand for further proceedings consistent with this memorandum, and we do not resolve the other issues raised.

**{26}  IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Chief Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**MEGAN P. DUFFY, Judge**